[PHILADELPHIA, FEBRUARY 10, 1841.]

BRADFORD and Others *against* BRADFORD.

FLINTHAM and Others *against* BRADFORD.

A will contained the following provisions : " As to my worldly goods of all sorts and kinds, I will and order that they shall be put under the care and be kept as a general fund, (except such as shall be hereafter otherwise ordered in this will or my codicil hereto affixed,) by my executors· and their successors thereafter for the term of one hundred years from and after my decease, and all the rents and profits to be equally divided between my four children S., T., W., and S., on the seventeenth of May and twenty-seventh of November of each year, and on the death of either of them, the portion of the deceased to be divided and paid to each of their children equally. That on the death of either of my executors a successor shall be chosen by the survivors of my children, and the children of the deceased, as one to vote·in the choice as representative of·their parent, and on the death of all my children, then by all the survivors who are entitled as above and so on for the above-mentioned 100 years, after which, the whole to be equally divided among the survivors who shall retain the surname of Bradford and shall be lineally descended from me." The testator gave an annuity to his housekeeper, and certain articles of furniture, &c. to certain of his children, and concluded with the appointment·of executors. By a codicil the testator, reciting that his son S. had involved his brother T. in difficulty, directed that his executors should annually, " as the portion of my estate becomes due to the said S., pay three-fifths of the said legacy to the said T. till the whole debt with the interest shall be liquidated and the remainder to the said S. ;" and reciting that his son W. had involved him in debt, he concluded as follows : " it my will that before they any part or parcel of the sum devised him, that my executors shall pay for the relinquishment of the said debt three-fourths of the legacy, and the remainder to the said W." *Held*, that the real estate of the testator did not pass under this will.

THESE were actions of ejectment, brought in this Court to July

(Bradford and Others *v.* Bradford.)

Term, 1839, to recover a lot of ground in the City of Philadelphia.

The plaintiffs claimed as heirs of Thomas Bradford, deceased, who died in the year 1838, seised of the premises in question, and leaving three children and several grandchildren, the issue of deceased children; and leaving a will and codicil in the following words:

"Hoping that in him, who has preserved me.to the age of ninety years, and rendered me many blessings, I shall still find favour hereafter, I leave the disposal of that immortal part that decayeth not.

As to this mortal frame, I hope 'my children will deposit it along side my dear Mary and my parents.

As to my worldly goods of all sorts and kinds, I will and order that they shall be put under the care and be kept as a general fund, (except such as shall be hereafter otherwise ordered in this will or any codicil hereto affixed,) by my executors and their successors thereafter for the term of one hundred years from and after my decease, and all the rents and profits to be equally divided between my four children Samuel F., Thomas, William and Susan, on the seventeenth of May and twenty-seventh of November of each year, and on the death of either of them, the portion of the deceased to be divided and paid to each of their children equally.

That on the death of either of my executors a successor shall be chosen by the survivors of my children and the children of the deceased, as one vote in the choice as representative of their parent; and on the death of all my children then by all the survivors who are entitled as above, and so on for the above-mentioned 100 years, after which, the whole to be equally divided among the survivors who shall retain the surname of Bradford and shall be lineally descended from me.

I give and bequeath to Ann Cleim, late Ann Field, for her care and attention of me while my house-keeper, one hundred and twenty dollars per annum, to be paid to her semi-annual or quarterly as may suit her, for and during her natural life; but if alienated then the payment of it to cease, as I only mean it for her benefit.

To my son Thomas I give my watch and my share in the Philadelphia Library, and to his daughter I give, agreeable to promise, the large looking-glass with gilt frame.

To my daughter Susan Ritter, I give the furniture of my room except books and the three cases containing them, which must be *be* delivered to my executors, for use of any of daughters that may be doomed to keep maidens' hall.

I hereby nominate and appoint as executors to this will my son Thomas, and my daughter Susan Ritter and Abram Ritter, made the twenty-seventh of May, 1835."

Codicil.

" My son Samuel F. Bradford having involved his brother Tho. Bradford, Junr. in difficulty and trouble by his non-payment of notes and contracts endorsed and entered for him the said Samuel, it will and it is hereby directed that my executors shall annually, as the portion of my estate becomes due to the said Samuel Bradford, pay three-fifths of the said legacy to the said Tho. Bradford till the whole debt with the interest shall be liquidated, and the remainder to the said Samuel.

And as my son William Bradford has involved me in his debt to the family of James Darrach or some of them, it my will that before they any part or parcel of the sum devised him, that my executors shall pay for the relinquishment of the said debt, three-fourths of the legacy, and the remainder to the said William."

On the trial, before SERGEANT, J., at a Court of Nisi Prius held in Philadelphia, a verdict was taken for the plaintiffs, subject to the opinion of the court on the evidence and facts stated, with liberty to enter judgment for such part of the premises, if any, as the court should be of opinion that the plaintiffs were entitled to recover in the action; or to enter judgment for the defendant, if the court should be of opinion, that the plaintiffs were not entitled to recover in this action.

Mr. *Price,* for the plaintiffs.

1. We claim for both plaintiffs on the ground of intestacy, and as heirs at law. The real estate is in back lands and city lots, to a large extent unproductive. The inconvenience would be great, if locked up. The will is inartificially drawn. The first objection is, that the will does not pass the real estate. No case shows, that by the words *worldly goods* real estate passes: and nothing in the will extends their interpretation. The only word that looks so is *rents:* but personalty will produce rents. There are no words of devise applicable to real estate. They are to be a *general* fund, which is not applicable to realty. Johnson defines it a bank or stock of money, contrasted with substantial acres. It means public money invested— public funds. It is to be kept by the executors, whose province is the personalty. ' I make my wife executor of my goods and lands,' held not to pass real estate. So the codicil calls the share a sum— a legacy. At the end of the 100 years, when to be divided, no term is used, denoting real estate; nor by any exceptions, does he imply he means real estate. *Ram on Wills,* 257, the heir at law has the elder and better title till supplanted by express words or necessary implication. This rule is stronger in Pennsylvania, as the effects are equally divided: and here by the will, two branches are cut off. This rule is recognised in 2 *Binn.* 20. 3 *Binn.* 480, if the intention is doubtful, the heir takes. 2 *Str.* 969, necessary implication must be

from words showing the plain intent of the testator. Here we say, there is none such. *Co. Lit.* 118, *b.* no estate of freehold or inheritance is comprehended under the words *bona* or *catalla*. *Brown* v. *Dysinger*, (1 *Rawle*, 409,) " respecting any earthly property," at p. 413, 415, held not to be intended to include lands, being no words of limitation or perpetuity. *Campbell* v. *Gilbert*, (3 *East*, 516,) words "personal effects." *Walker* v. *Walker*, (3 *Bos. & Pul.* 375.) 1 *Wils.* 333. Goods and chattels will carry lands, if explained by the testator. 2 *W.* 65. *Goods*, not so extensive as chattels or effects, which by themselves, have been held not to carry real estate. 1 *Lev.* 130. " I give all to my mother," lands won't pass. *Finch. Pr. Ch.* 491. Testator makes one executor of all his goods, lands and chattels; held not to pass lands. 6 *Term Rep.* 610, all the rest of his estate and effects of what nature, &c. to A. and B., their executors, &c. to accumulate, lands held not to pass, in consequence of the channel it was put into. So here it is to executors to be elected by the heirs. *Ram on Wills*, 31. 1 *Swanst.* 201. 1 *Ves. & B.* 466. Lord ELDON says, conjecture is not to be taken for implication: the latter can be only from necessity, necessary implication. 5 *Term Rep.* 558. 2 *Prest. Est.* 178; *Ib.* 129, shows that the word *estate* used in the codicil, is not an operative word. *Portion* would do as well. It cannot add to the strength of the will. There is no devise to the executors ; it is only to be put under their care. The legal estate descends to the heirs, no words being used to pass a title to the realty. The trust is only as to what comes into their hands. He does not say the executors are to divide the rents and profits. If personalty, it would of course come to them. Till the act of 1792, a power of sale to executors did not pass them the title. 3 *W.* 291. Here is no power of sale—only a power to take care of the lands, which does not pass the title; and the act of assembly does not apply. 1 *Pow. Dev.* 233, shows, that the common law was, that there was only a naked authority. In *Wright* v. *Hammond*, (*Comyn's Rep.* 232,) it was held a mere recital did not amount to a devise. So here there is as to the executors a mere recital. Therefore I say, the heirs take the real estate and are to divide the rents and profits; the executors take the personalty, and are to divide its rents and profits.

2. If the will is operative as real estate, then it vests in the testator's children for life, with remainders over in fee to their children. So that the plaintiffs, Bradfords, (their father having died in the lifetime of the testator and before the will,) have an immediate right. 3 *Rep.* 459, a devise of rents and profits gives the fee. By the act of 8th April, 1833, sec. 9, (*Purd.* 1033,) a fee passes without words of perpetuity, unless the contrary intention appears. By the devise to the children after a parent's death, (the devise for 100 years being void,) they take a fee. The restriction is to those of the name of Bradford, lineally descended from him, which is to a fewer set

as purchasers. Till then all claim that are descended from him. *Roney* v. *Stiltz,* (5 *Wharton's Rep.* 381.)

3. The limitation over to the lineal descendants of the name of Bradford, is a perpetuity and void, and therefore the grandchildren, if entitled in fee, come in now. 2 *Pow. Dev.* 230. Objects of substituted bequest must come *in esse,* in order to divest prior estate, where they are to take on a contingency. An executory devise must vest within a life or lives in being or twenty-one years after. 1 *Cox's Rep.* 324. 7 *Bligh's New Rep.* 202, 239. Supposing this a term of 100 years to the executors, yet there is no limitation that the devisees are to take within the legal term of twenty-one years, &c. but may go beyond it. 2 *Mer.* 363, 388, Lord Chancellor. *Garret* v. *Rex,* (6 *Watts,* 14,) bequest of income is bequest of fund. 2 *Pow. Dev.* 631.

Mr. *Scott,* contra.

1. The main question is, whether lands passed by the will. All the clauses and words of the will and codicil are to be considered, and the intent of the testator arrived at, which is the polar star. 2 *W. Bl.* 444. 450. 2 *Prest. Est.* 172. 1 *Salk.* 239. 1 *Bro. Ch. Cas.* 437, "*all 1 am worth.*" *Cas. Tem. Talbot,* 286, "all my *concerns.*" *Doe* v. *Langland,* (14 *East,* 370,) "all the residue of my *property,* goods and chattels." *Harper* v. *Blain,* (3 *W.* 472.) 1 *R.* 409, "any earthly property," not sufficient without intention. And at last no words are decisive; but they are construed by the intention, and that is discovered by other parts of the will. Here are words applicable only to real estate as "rents and profits." 1 *Atk.* 493. *Ib.* 506. 1 *P. W.* 416. 2 *Ch. Cas.* 205. 3 *P. W.* 75. 1 *Atk.* 550. 2 *Str.* 1020. "Ground rents." 4 *Term Rep.* 89. "Remainders of the profits out of my whole estate." 3 *R.* 489. 5 *Burr.* 2638. 1 *H. Bl.* 223. 1 *Ch. Cas.* 262. 12 *R.* 414. Estate, 2 *Term Rep.* 656. 1 *Yeates,* 191. 11 *East,* 290. No words so fixed, but they must yield to the testator's meaning. *Ib.* 246, realty may pass by "personal estate," being clearly intended. 2 *Term Rep.* 659, as to the provision (in the codicil) as to Samuel. I am instructed to say that the debt to T. Bradford could not possibly be extinguished by three-fifths of one-fourth of personalty. 3 *Burr.* 1684. *Cowp.* 352, charge on estate extends it to fee.

2. If the will passes real estate, then they have a term of 100 years. It is not now important who takes after them. In any event the trust would not fail for want of a trustee. Is the estate conveyed a perpetuity? The length of the term in trustees does not create this, when to subserve trusts. Perpetuity is as to *cestui que trusts.* If not, 100 years is not *ex vi termini,* a perpetuity. *Gore* v. *Gore,* (2 *P. W.* 28.) 1 *P. W.* 332, good so far as within the time, bad beyond. 2 *Bro. Ch. Cas.* 51. 2 *Prest. Ab.* 168, to the unborn child of a person in being, is good. This would take not only chil-

dren of the four living at the testator's death, but those born after. And this was what the chancellor was speaking of, in 2 *Mer.* 363, cited by Mr. Price. The devise was inseparable. There is no executory devise here except the limitation over after the 100 years. 3 *Term Rep.* 86. *Cowp.* 656. 2 *Prest. Ab.* 168. 2 *Term Rep.* 245. 2 *Ves.* 644, execution of powers good in part, bad in part. *Cy pres.* 1 *Burr.* 38. The intention must be consulted. 2 *Term Rep.* 241. 3 *Burr.* 1626.

Mr. *Mallery* on the same side.

1. All his worldly goods, mean all his estate. The intention governs. *Ram on Wills*, 266. 3 *Hawke's N. C. Rep.* 74. If, as is said, the object of the testator was to gratify his pride and ambition, by making his lineal descendants, of his name, rich one hundred years hence, that would only be gratified by the advance of his back lands. His personal estate would be worn out or lost by this time. "Rents" is the peculiar term applicable to the income and profits of real estate. By a devise of rents the land passes.

2. No particular language is necessary to create a trust. *Lewin Trust.* 44. The direction here that the property should be put under the care of the executors, and kept as a general fund, and they should distribute and liquidate debts, creates them trustees, and gives such an estate in them as gives them a title to present possession, which is sufficient now. *Fletch. Trust*, 2. Where the intention is clear, an estate in the trustees will be implied, to effect the desire of the testator. 1 *Pr. Wms.* 505. *Fletch.* 23. 1 *Eden's Ch.* 119. 3 *Bos. & Pul.* 178. 1 *Eden's Rep.* 36, and note, containing a collection of the cases. Then as to the extent of the estate of the trustees, the doctrine is, that they must be construed to take an estate as large as is necessary for the purposes of the trust, and commensurate with the duties imposed upon them. *Fletch.* 23, and cases. 3 *Barn. & Ald.* 537. By the act of 24th February, 1834, § 12, all powers not given by will to any one, are to be deemed to be given to executors. Sect. 13 gives title to executors to remedy by action, &c. Sect. 14 gives surviving executors power. Sect. 67 extended to administrators with will annexed. The children of Samuel, by the act of 1833, are placed in the same situation as the father. *Newbold* v. *Pritchett,* (2 *Wharton,* 49,) decides that the father is still a *propositus* from whom the children are to claim: so that the children of Samuel would stand as he did. Then there is a devise to the children, with a remainder to the grandchildren. So far, it is unquestionably good. Supposing, as perhaps is the case, Samuel dying in testator's life, his life estate expired, then his children took in their own right. 2 *Cruise*, 260, tit. xvi. *Rem.* ib. 269, 270, that a remainder for life expectant on an estate for life, is a vested remainder. The grand-children *in esse,* at the testator's death, took a vested remainder for life. As to those not *in esse,* it would be a

good contingent remainder, there being a freehold to support it. If the legal estate is in trustees, there need not be a freehold to support it; it is then an executory devise. So that whether there is an executory devise or contingent remainder, the grandchildren take; they must be in existence within a life or lives in being, and twenty-one years after. This is sufficient for the parties claiming now under the will. 1 *Eden's Rep.* 124, 125, limitation in trust has the same construction as an estate executed. Then as to the future limitations one hundred years hence, we need not inquire; they may be bad, yet the present one is good. Even if the term in trust is bad, yet the rights of the *cestui que trusts* are not destroyed. *Will. Trust.* 82, that the legal estate remains in the trustees, though some of the trusts are void, if some are valid. For the former he holds for the heir at law. 1 *Pr. Wms.* 332, conveyance shall be *cy pres* to the first for life, and the next in tail. 2 *Eden's Rep.* 330, 1 ib. 404. 5 *Barn. & Ald.* 801, two first estates held good, and subsequent limitations void. 3 *Mer.* 363, cited by Mr. Price, is a case where the parties waited till the first good estate had expired.

Mr. *Meredith* in reply,

1. 10 *Ves.* 466. 1 *Ball. & Beatty,* 542. 6 *Term Rep.* 610, show that the state of the testator's property forms no ground for deciding on a will. But this is not important here, because the situation of the testator's property is not before us. No words will pass property in a will which would not in a deed. 12 *Serg. & Rawle,* 270, 2 *Watts,* 65. The difference between them is as to limitations, but not as to the description of the property. There is no case in Pennsylvania in which the mere term *goods* has been held to pass real estate; something else has existed to give it such a construction. What else is there here? If rents and profits carry real estate, then it is devised immediately to the children, to be divided among them, and the executors have nothing to do with it; and the income of the personal must accumulate. It is a separate devise. But this would be a strained construction; the whole must be read together, and the words rent and profits mean merely the income of what he-had previously bequeathed, and do not extend it. Rent popularly may proceed from personal estate. Testators may have chattels real. Personalty might be invested by executors in real estate. The word estate, used in the codicil includes any kind of property. In the intestate act of February 3d, 1834, § 2, the word estate is applied to personal property, and all through the act, and in legal proceedings, means either real or personal. If you strike it out, it don't vary the phrase or effect of it; and this is the test laid down by Mr. Preston, 2 *Prest. Est.* 129; against this term we have to set off expressions and directions wholly irreconcileable with it. In *Doe* v. *Buckner,* (6 *Term Rep.* 613,) the court relied on the direction that interest, &c. was to be consolidated to make one sum. There the same word

sum is used, and they are to be kept as a general fund, which real estate can't be. It is also to be under the care of executors, which brings the case within that in *Finch*, there being no words of inheritance. The exceptions mentioned in the will to be provided for, are all of personal estate. Again, at the end of the one hundred years, the whole is to be equally divided, meaning paid. The term, "as it becomes due," don't apply to real estate. There is no power to the executors to rent or sell the real estate, or do any thing with it. It all applies to personalty in respect to which the executorship is to be continued by administrators *de bonis non*, chosen in a way somewhat different from the law. This case is not like those cited, in which introductory words were used, or express disinheritance of some of the children. No intention is expressed to disinherit the Flinthams and Darrachs.

2. If the will embraces lands, what is the interest in S. F. Bradford's children? There is no estate given to the executors. The case in 3 *Burr.* 1684, is where there is an express direction that the trustees and his heirs should annually pay the legacies, should repair, &c. Here are no words of inheritance, nor directions to repair, unless it be implied from first implying they were trustees, which I deny can be done. The case in 3 *Bos. & Pul.* cited, lays down the rule that trust is implied when something is to be done by executors. The same rule, 1 *Eden*, 36, 3 *Barn. & Ald.* 537, (5 *Eng. Com. Law Rep.* 358.) But here if the devise is of the real estate, there is nothing to be done; it is to be divided. I say the trust estate is void, because the beneficial estates are illegal as a perpetuity, and the heirs at law have the immediate right as a trust executed. The estates devised are life estates to the children, with remainders in fee simple to the grandchildren. Therefore, S. F. Bradford's children are entitled to recover. *Davy* v. *Stephens*, (*Doug.* 320,) on a devise to one and his children, he takes an estate tail. But under an act of assembly, all devises (no contrary intention being expressed,) carry a fee simple. That contrary intention must be a legal intention. *Dunn* v. *Taylor*, (18 *Eng. Com. Law Rep.* 457.) Under *Stehman* v. *Stehman*, (1 *Watts*, 466,) this would be a vested remainder; that is, the estate would open to let in after-born children. S. P. 2 *Pow. Dev.* 304. Therefore the learning of contingent remainders and executory devises is unnecessary, and no trust is necessary to support contingent remainders. The worst that could happen would be to make it an estate tail; and if so, it is a matter of no consequence. The objection to their immediate right is, that the testator has declared it shall be inalienable, in order to create a perpetuity; which the law forbids. No duty is imposed on the trustees; it is simply that the rents and profits shall be divided among the children. If the children have only an estate for life, it is sufficient to enable them to recover.

(Bradford and Others *v.* Bradford.)

The opinion of the Court was delivered by

GIBSON, C. J.—Though any expressions in a will may perform the office of technical terms, the intention must be manifest, and rest on something more certain than conjecture.   This is the sum of the matter, as it is stated by Lord KENYON, in *Hay* v. *Coventry*, (3 *Term Rep.* 85,) and *Doe* v. *Mulgrave*, (5 *Term Rep.* 323.)   Guesses may be formed, said Lord MANSFIELD, in *Doe* v. *Sheppard*, (1 *Doug.* 78,) but that is not enough: perhaps *quod voluit non dixit;* conjectures may be made both ways.   Lord NORTHINGTON declared, in *Stephenson* v. *Heathcote*, (1 *Eden Rep.* 43,) that the court must proceed on known principles and established rules; not on loose conjectural interpretations, or by considering what a man may be imagined to do in the testator's circumstances.   The principle is applicable in all its force to a case like the present, in which the question goes to the birthright of those who, standing in the place of the common law heir, are not to be disinherited, except by express devise, or, as it is said in 1 *Powell on Devises*, 199, by implication so inevitable, that " an intention to the contrary cannot be supposed."   It is doubtless improbable in this instance that the testator designed to leave the disposal of his real estate to the intestate laws, while he bound up his personal for a hundred years; yet I feel entirely assured that he actually intended to dispose of, not the title to his land, but at the most, the profits of it.   This however is no more than confident conjecture; and we must come at last to an analysis of his language to ascertain the legal meaning of it.

The words " worldly goods of all sorts and kinds," though very general, are properly applicable only to personal estate; and when they stand alone in a will, they signify no more than an intention to dispose of it.   In *Doe* v. *Tofield*, (11 *East*, 246,) *Doe* v. *Lainchbury*, (*Id.* 290,) *Doe* v. *White*, (3 *East*, 33,) *Den* v. *Trout*, (15 *East*, 393,) and some more recent cases, the word ' effects,' the synonyme of ' goods,' has been allowed, when associated with words of a broader meaning, to carry land; but in each of these cases it was used as the equivalent of something else with which it was explicitly connected.   Standing alone, it was restrained to personal estate in *Camfield* v. *Gilbert*, (3 *East*, 516;) and in *Brady* v. *Cubitt*, (1 *Doug.* 40,) Lord MANSFIELD said that the word legacy, in its ordinary signification, is applied to money, but that it may signify a devise of land; and so indeed it did in *Hardacre* v. *Nash*, (5 *Term. Rep.* 716.) The word property being usually applied in common parlance indifferently to chattels and land, has a larger signification, and may pass real estate without assistance; as it was allowed to do in *Doe* v. *Langland*, (14 *East*, 370.)   But it may safely be affirmed, that however extensive its effect in respect to things *ejusdem generis,* the phrase, ' worldly goods of all sorts and kinds,' when not enlarged by the context, has regard exclusively to the personal.

What, then, is there in the context of this will to enlarge it? Having ordered his worldly goods to be put under the care of his executors, and kept by them and their successors, for a hundred years, as a general fund, he directs the "*rents* and profits" to be equally divided among his four children or their offspring. Now this word rents, is the only one in the will which is exclusively applicable to real estate; and though it might extend the meaning of the word goods, its correlative, were it not itself subsequently restrained, yet the testator speaks of the shares of his sons Samuel and William, as legacies, and of portions of his estate, as sums annually to become due. It is perfectly clear therefore, that he did not intend to give them an interest in any thing but the moneys annually arising from the fund, of whatsoever constituted. Land will doubtless pass by the word "rent," as it did in *South* v. *Aliene*, (1 *Salk.* 228,) and *Kerry* v. *Derrick*, (*Cro. Jac.* 104); but the devisees, in those cases, became the absolute owners of the soil; and there certainly was no design that they should become so in this. But though the terms I have mentioned might not alone control the signification of the word rent, they are certainly introductive of limitations which are impracticable in their application to real estate. In *Spearing* v. *Buckland*, (6 *Term Rep.* 610,) a testator gave certain pecuniary legacies, after having, in the usual introductory clause, professed to give his estate, both real and personal; and proceeded thus: "all the rest, residue and remainder, of my estate and effects, of any, and what nature and kind soever, or wheresoever, I give and bequeath the same unto C. B. and J. R., their *executors and administrators*, in trust that they shall, from time to time, add the *interest* thereof to the *principal*, so as to *accumulate* the same, as it is my will that the said residue shall not be *paid or payable*, but at the time, and in the manner, and to the several persons, as the said principal sum of four thousand pounds (one of the legacies before given) is before directed to be paid;" and it was held, notwithstanding the introductory clause, and the sweeping bequest of the residue, that the real estate did not pass. The same construction was made of clauses almost as strong in *Murrell* v. *Hurrell*, (5 *Barn. & Ald.* 18; S. C. 7 *Eng. Com. Law Rep.* 8.) It must be admitted, however, that in *Burket* v. *Chapman*, (1 *H. B.* 223,) equally strong expressions, exclusively applicable to personal estate, such as "having and receiving," and "payment to guardians," were not allowed to restrain the generality of the words, "all the rest and residue of my estate, of what nature or kind soever." And in *Newland* v. *Majoribanks*, (5 *Taunt.* 238; S. C. 1 *Eng. Com. Law Rep.* 104,) Sir JAMES MANSFIELD and Mr. Justice HEATH, divided in opinion, whether a devise of all the rest, residue and remainder of the estate, was restricted to the personal, by a direction to put the subject of it out at interest, with power to change the securities. To the infinite variety of circumstances and expressions perpetually occurring in cases of the sort,

(Bradford and Others *v.* Bradford.)

no rule of interpretation can be uniformly applied, and the soundest minds will come to opposite conclusions in respect to them; but a decisive majority of the profession will probably concur with Sir James, that the testator, notwithstanding the generality of his words, supposed himself to be dealing with only part of his estate. In *Dunnage* v. *White*, (1 *Jac. & Walk.* 533,) a devise to trustees of " all the rest, residue and remainder of my estate or effects whatsoever and wheresoever, of what nature or kind soever," was held to pass the legal title to real estate; but because the trust, as expressed, was confined to specific items of personal estate, a resulting trust of the messuage in contest, was decreed to the heir. It is truly remarked in 1 *Pow. on Dev.* 179, that this case is merely an instance of the exclusion of real estate from trusts which manifestly did not extend to it; but had they purported to extend to all that had been given, and had the whole been subjected to limitations inapplicable to real estate, the material parts of the case would have been much nearer to those of *Spearing* v. *Buckland*, and have brought the decisions in the two cases more decisively in conflict. But no more was decided in *Dunnage* v. *White*, than that general words of devise to trustees, will not be restrained merely because the declaration of trust is not so broad as the legal estate. That case, however, is a pregnant proof of the lightness of general expressions as evidence of intention, when weighed with those by which it is carried out in detail; for the testator certainly never intended to pass the legal title of his real estate, merely to create a resulting trust for his heir. Yet no more positive and general terms could well have been used; and the case therefore furnishes a reason for not paying too much respect to sweeping expressions in any case. I take it, then, that notwithstanding an admitted discrepance of decision, the authority of *Spearing* v. *Buckland* is unshaken; and how does it affect our case? There the property was devised to trustees and their *executors;* here the trust is committed to the executors and their *successors*—a limitation equally, if not more inapplicable to land than the former; for though title to chattels might pass to a chosen successor through the instrumentality of letters of administration *de bonis non* with the will annexed, the title to land could not. Again, the terms, sums and legacies, annually payable, and annually falling due, savour as strongly of the personal as do directions to put out for accumulation, add interest to principal, and pay only at specified times. Another provision savours of it still more strongly. The devise in *Spearing* v. *Buckland* was to trustees; in this instance it is to the executors; and though comparatively little effect has been given, in the later decisions, to collocation of the subject-matter with the executorship, it is still not destitute of force. By associating the property of the trust with the duties of his personal representatives, the testator may, in a doubtful case, be supposed to have contemplated nothing but what appropriately belongs to the office. That, however, would not

(Bradford and Others *v.* Bradford.)

itself be sufficient to exclude the real estate from words which obviously include it; but in a balancing case it might turn the scale. In conclusion, it must be admitted that every part of this will is debateable ground; yet, though the case is not entirely a clear one, we are on the whole, of opinion, that the real estate did not pass: and this determination supersedes the other points made at the argument.

                                  'Judgment for the plaintiffs.