Christopher Shawn ROSE, b/n/f
Margaret Ann Rose,
Plaintiff-Appellee,

v.

Ella STALCUP, Executrix of the Estate
of Samuel Stalcup,
Defendant-Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Feb. 3, 1987.

Rehearing Denied Feb. 18, 1987.

Permission to Appeal Denied by
Supreme Court June 1, 1987.

Whelchel & Attanasio, Knoxville, for defendant-appellant.

Thomas D. Kerr, Jr., Knoxville, Robert L. Ogle, Jr., Sevierville, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

In this action, the plaintiff, a minor, seeks to establish a child-parent relationship with the deceased for the purposes of intestate succession pursuant to T.C.A., § 31-2-105.[1] A jury determined the deceased was plaintiff's father and the trial

---

1. T.C.A., § 31-2-105, in pertinent part, provides:
    If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:

     .    .    .    .    .

court entered judgment. Decedent's executrix has appealed.

The executrix argues, since a petition to establish paternity pursuant to T.C.A., § 36-2-103 was filed in the Juvenile Court of Sevier County on behalf of plaintiff, the dismissal of that action is *res judicata* to the instant case. In the prior case, the issue of paternity was not determined; moreover, the juvenile court did not have jurisdiction to establish the relationship of parent-child for the purposes of inheritance. *Thompson v. Coates*, 627 S.W.2d 376 (Tenn.App.1981). The dismissal of the paternity action is not a bar to this action. The executrix argues, however, since this proceeding is an adjunct to the will contest, it is not for purpose of intestate succession under T.C.A., § 31-2-105. We do not agree. The determination of the relationship is necessary to establish plaintiff's standing to contest the will.

The executrix insists the trial court erred in allowing plaintiff's mother to testify to sexual relations with the deceased, which actions the executrix equates with "any transaction" in the Dead Man Statute, T.C.A., § 24-1-203, and the mother, as next friend, is a party within the meaning of the statute. We do not reach this issue because the mother testified in detail to her relationship with the deceased without any objection by the executrix and, on cross-examination, the attorney for the executrix cross-examined the witness on this subject. This constitutes a waiver of any objection to the testimony. *See Nabors v. Gearhiser*, 525 S.W.2d 145 (Tenn.1975).

Under T.C.A., § 31-2-105 and the leading case of *Allen v. Harvey*, 568 S.W.2d 829 (Tenn.1978), paternity must be established by "clear and convincing proof". The executrix contends the proof does not satisfy this standard.

(2) [A] person born out of wedlock is a child of the mother. That person is also a child of the father, if:

     .         .         .         .         .

(B) The paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof,

. . .

The trial court properly apprised the jury of the applicable standard and the child's mother testified without contradiction that she met deceased in 1970 and they had dated in Atlanta and, in 1974 or 1975, deceased advised her he was married and she did not see him for some time. Subsequently, after he was divorced, she visited him in Gatlinburg. She testified they spent the night of November 12 together in Gatlinburg and attended Tennessee-Mississippi football game on Saturday, November 13, 1976.[2] They returned to Gatlinburg and spent Saturday night and Sunday night together. She testified to their having engaged in sexual relations all three nights. The plaintiff was subsequently born on August 14, 1977. At some point deceased moved to Texas and plaintiff's mother made several attempts to contact deceased by telephone and letters. She also employed an attorney to assist her. Shortly after decedent's mother died in January of 1978, plaintiff's mother met with decedent and he neither admitted nor denied the child was his but promised to "get back" with her. In December of 1978, she learned he was in Gatlinburg and there she confronted him with the child. His response was: "How do you know it's mine?" The deceased's sister-in-law was in an adjoining room during the confrontation and the evidence is in conflict as to whether the deceased became abusive and called the child's mother names. The mother concedes, however, she was asked to leave. She admitted on cross-examination she had engaged in sexual relations with another man some two to three months prior to her liaison with deceased in Gatlinburg in November. The deceased's sister, Jane Stalcup, testified that in May or June, before her brother died, he had called advising he was at Arnold Vickers' house and wanted to see her. She was excited since she had not seen him for a while and went to the Vickers'. While they were alone together, he said, "Do you remember that I told you about Margaret Ann Rose?", to which she replied, "Yes", and he then said: "She says I am the father of her child ... probably am, let her prove it," and then toasted her with his glass and smiled. She testified her reaction was one of disgust and explained: "I was just disappointed with him." There is ample evidence for the jury to determine the deceased is the child's father under the applicable standard.

The executrix contends Jane Stalcup's testimony should not have been admitted because plaintiff did not establish the witness was unavailable. Her testimony had been offered in deposition form in the previous trial and her deposition was read in evidence over the defendant's objection. T.R.C.P., Rule 32.01(3) provides the deposition of a witness may be offered in evidence "if the court finds ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition." The record establishes Jane Stalcup resided in Atlanta, Georgia, and the trial court, at the time of the objection, determined the witness resided out of state and more than 100 miles from the courthouse. This evidence was properly admitted.

The remaining issues raised have been considered and found to be without merit. We affirm the judgment of the trial court and remand, with cost incurred on appeal assessed to the defendant-appellant.

SANDERS and GODDARD, JJ., concur.

---

2. Her ticket stub was filed in evidence. The record otherwise establishes the ticket stub is one of a number of tickets purchased by deceased for the game.