Elizabeth LANIER

v.

Stephen L. RAINS et al.

Supreme Court of Tennessee.

Feb. 2, 2007 Session.

June 28, 2007.

Keith C. Dennen and Rachel C. Nelley, Nashville, Tennessee, for the appellant, Elizabeth Lanier.

Phillips M. Smalling, Byrdstown, Tennessee, and Amy V. Hollars, Livingston, Tennessee, for the appellees, the Estate of Dexter Lyndon Rains, Stephen L. Rains and Jo Ann Rains, Co–Executors.

## OPINION

GARY R. WADE, J., delivered the opinion of the Court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER and CORNELIA A. CLARK, JJ., joined.

The Petitioner, Elizabeth Lanier ("Petitioner"), sought legitimation after the death of Dexter Lyndon Rains ("Decedent") so as to share in his estate as a pretermitted heir under Tennessee Code Annotated section 32-3–103 (2001). The chancery court sustained a motion to dismiss filed on behalf of the Decedent's estate and the Decedent's wife and son as Co–Executors of the estate ("Defendants"), and the Court of Appeals affirmed. We granted review to resolve the conflict between the ruling of the Court of Appeals and a prior unpublished opinion of that court. Because the Petitioner does not qualify as a pretermitted heir and has not demonstrated a viable claim under our equal protection clause, she is not entitled to share in the estate. Accordingly, the judgment of the Court of Appeals is affirmed in part. The claim for legitimation is remanded to the chancery court for further proceedings because, despite our holding, the Petitioner is entitled to have the opportunity to establish that the Decedent was her father. The judgment of the Court of Appeals, therefore, is reversed in part and remanded.

The Decedent, a successful businessman in the Cumberland Plateau area, died on July 30, 2004. Less than three weeks later, his wife, JoAnn Rains, and their son, Stephen Rains, who had been designated as the co-executors for the estate and were the only named beneficiaries in the Decedent's last will and testament, filed a petition to admit the will to probate. The estate included, among other assets, a bank and an insurance agency. After the will was approved for probate, the Petitioner filed suit to establish paternity. She also lodged a claim for a one-third share of the estate under a statute designed to protect a child born after the making of the parent's will:

(a) A child *born after the making of a will,* either before or after the death of the testator, ... not provided for nor disinherited, but only pretermitted, in such will, and not provided for by settlement made by the testator in the testator's lifetime, shall succeed to the same portion of the testator's estate *as if the testator had died intestate.*

(b) Toward raising the portion of such child, the devisees and legatees and other heirs shall contribute out of the parts devised, or bequeathed to, or settled upon them by the testator, in the proportion borne by their respective devises, legacies, or settlements to the whole estate of the testator.

Tenn.Code Ann. § 32–3–103 (2001) (emphasis added).

The Petitioner, who was born in Putnam County on December 23, 1961, almost forty-three years before the death of the De-

cedent, claimed that the Decedent was her biological father. During his lifetime, the Decedent neither supported the Petitioner nor sought a declaration of legitimation. His will, executed on June 30, 1998, made no mention of the Petitioner. As support for her claim that she could be considered as "born after the making of a will," the Petitioner relied upon an unreported opinion from the Court of Appeals which, under similar circumstances, provided that a judicial decree of paternity and legitimation established the "legal birth" date for purposes of Tennessee Code Annotated section 32–3–103(a) (2001), regardless of the actual date of birth of the claimant. *Rose v. Stalcup,* No. 140, 1988 WL 69501 (Tenn.Ct.App. July 8, 1988).

The Defendants, who filed an exception to the claim, expressed no personal knowledge of whether the Decedent was the Petitioner's biological father. They did, however, concede that during the lifetime of the Decedent, the Petitioner was purported to be his child. As a defense to the claim, the Defendants relied upon the plain language of the statute, contending that the Petitioner did not qualify as being "born after the making of the will." The Defendants challenged the propriety of the *Rose* opinion and further asserted that the Decedent had implicitly disinherited the Petitioner by the terms of the will. The Defendants contended that because the Petitioner failed to state a claim for relief under the pretermitted heir statute, her ancillary petition to establish paternity, as merely incidental to the claim of inheritance, should be dismissed.

The chancellor granted a motion to dismiss, observing that "the Legislature [n]ever intended to allow courts to birth children by legitimation and use this fiction to place them within the means of the pretermitted child's statute." After concluding as fact that the Decedent knew about his relationship to the Petitioner, the chancellor relied on the ruling in *In re Estate of Eden,* 99 S.W.3d 82 (Tenn.Ct. App.1995), in which the Court of Appeals held that a testator who specifically left his property to named individuals disinherited his other heirs by implication, to conclude that the Petitioner was not entitled to inherit from the Decedent. *Id.* at 93.

The Court of Appeals affirmed the judgment, dismissing the Petitioner's claim of legitimation and determining that she did not qualify as a pretermitted heir. The court specifically declined to follow the ruling in *Rose.*

## STANDARD OF REVIEW

## AND

## STATUTORY CONSTRUCTION

A Rule 12.02(6) motion under the Tennessee Rules of Civil Procedure tests only the legal sufficiency of the complaint, not the strength of the plaintiff's proof. The resolution of the motion is determined by an examination of the complaint alone. *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 938 (Tenn. 1994) (citing *Wolcotts Fin. Serv., Inc. v. McReynolds,* 807 S.W.2d 708, 710 (Tenn. Ct.App.1990)). For purposes of analysis, the motion contemplates that all relevant and material allegations in the complaint, even if true and correct, do not constitute a cause of action. In considering a motion to dismiss, courts must construe the assertions in the complaint liberally; the motion cannot be sustained unless it appears that there are no facts warranting relief. *Id.* (citing *Fuerst v. Methodist Hosp. S.,* 566 S.W.2d 847, 848 (Tenn.1978)). On appeal, all allegations of fact must be taken as true; our scope of review is de novo with no presumption of correctness. Tenn. R.App. P. 13(d); *Owens v. Truckstops of Am.,* 915 S.W.2d 420, 424 (Tenn.1996).

Thus, the assumption must be that the Decedent was the biological father of the Petitioner. *See Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn.2003).

▪ Whether the Petitioner qualifies as a pretermitted heir is a matter of statutory construction. The interpretation of a statute is a question of law subject to de novo review. *Leab v. S & H Mining Co.*, 76 S.W.3d 344, 348 (Tenn.2002); *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn.2000). We presume that every word in a statute has meaning and purpose; each word should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). If the statutory language is clear and unambiguous, we apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn.2004). When called upon to construe a statute, the courts must take care not to unduly restrict a statute's application or conversely to expand its coverage beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn.2002).

## LEGISLATIVE HISTORY

Under early English common law, a child born out of wedlock[1] could not inherit from either of his natural parents and had no heirs except his own bodily issue. *See* Max Stier, *Corruption of Blood and Equal Protection: Why the Sins of the Parents Should Not Matter*, 44 Stan. L.Rev. 727, 730 n. 15 (1992). This state first deviated from the common law in 1805, enacting a statute allowing a child born out of wedlock to inherit as if born during a marriage if the natural father legitimized the child by decree of the county court. 1805 Tenn. Pub. Acts, ch. 2, § 1; *Allen v. Harvey*, 568 S.W.2d 829, 832 (Tenn.1978). In 1819, the General Assembly passed legislation permitting a child born out of wedlock to inherit from his mother so long as she was without any legitimate children. 1819 Tenn. Pub. Acts, ch. 13; *Turnmire v. Mayes*, 121 Tenn. 45, 114 S.W. 478, 479 (Tenn.1908). By 1866, the restriction on inheritance from the child's mother was eliminated by statute. Children born to the same mother shared equal rights to her intestate estate regardless of whether the children were born in or out of marriage. 1866–67 Tenn. Pub. Acts, ch. 36, § 10; *Laughlin v. Johnson*, 102 Tenn. 455, 52 S.W. 816, 816 (Tenn. 1899).

In 1949, legislation provided that a marriage subsequent to birth served to legitimate the child without the need for a judicial decree. 1949 Tenn. Pub. Acts, ch. 70, § 1. Six years later, a judicial determination of paternity was recognized as an alternative method by which a child could become legitimated for purposes of intestate succession. 1955 Tenn. Pub. Acts, ch. 186, § 13. Finally, in 1978, our General Assembly enacted a statute permitting legitimation by judicial decree either before or after the father's death if paternity is established by clear and convincing proof. 1978 Tenn. Pub. Acts, ch. 763, § 3 (currently codified at Tenn.Code Ann. § 31–2–105) (2001)); *see Allen*, 568 S.W.2d at 833.

In 1997, the General Assembly combined the paternity and legitimation statutes and created one statutory scheme for both types of actions,[2] with the following limitations provision:

---

1. No references to a specific person as being "illegitimate" will be made in this opinion. *See* Tenn.Code Ann. § 36–2–317 (2005).

2. *See* 1997 Tenn. Pub. Acts ch. 477, § 1.

(a) *An action to establish the parentage of a child may be instituted before or after the birth of the child and until three (3) years beyond the child's age of majority.* The provisions of this chapter shall not affect the relationship of parent and child as established in § 31–2–105 [which is the parent-child relationship statute utilized for purposes of intestate succession].[3]

Tenn.Code Ann. § 36–2–306 (2005) (emphasis added). A suit strictly for the purpose of legitimation must, therefore, be filed within the limitations period established by this statute. *See In re Harris*, No. 01A01–9901–CV–00017, 1999 WL 548521, at *3 (Tenn.Ct.App. July 29, 1999) (holding that Tennessee Code Annotated section 36–2–306(a) barred action to establish parentage filed by an adult).

■ Pursuant to Tennessee Code Annotated section 31–2–105 (2001), the parent-child relationship statute, an individual retains the opportunity to establish a relationship to a decedent for purposes of establishing intestate succession rights. By the authority of section 31–2–105, this Court has held that a child born out of wedlock, whose paternity was not adjudicated prior to the death of the father, can establish the right to inherit by intestate succession by asserting that right against the estate within the time allowed for creditors to file claims against the estate and by establishing paternity by clear and convincing proof. *Bilbrey v. Smithers*, 937 S.W.2d 803, 808 (Tenn.1996). If a child

born out of wedlock asserts his status as a child of a decedent and a corresponding right to inherit by intestate succession within the time allowed for creditors to file claims against the decedent's estate, the claim will not be barred by any statutory limitations period. *Glanton v. Lord*, 183 S.W.3d 391, 399–400 (Tenn.Ct.App.2005).

**PRETERMITTED HEIR**

In the unpublished case of *Rose*, the testator, Sam Stalcup, executed a will in 1979 and died seven weeks later. 1988 WL 69501, at * 1. He left his entire estate to his four legitimate children. *Id.* Christopher Shaun Rose, who in 1977 was born outside of wedlock to his mother, Margaret Ann Rose, was not mentioned in the will. *Id.*

In 1987, eight years after the death of his biological father, Rose obtained a judgment of legitimation. *Id.* Meanwhile, Rose had filed a claim against his father's estate pursuant to Tennessee Code Annotated section 32–3–103(a), notwithstanding the fact that his physical birth had occurred prior to the date of the making of his father's will. *Id.* He argued that the pretermitted heir statute applied because his "legal birth" was simultaneous with the judgment of legitimation and, therefore, subsequent to the execution of the will. *Id.*

In reliance upon the language in *Scales v. Scales*, 564 S.W.2d 667, 668 (Tenn.Ct. App.1977), a case involving a father's bequest to his son "for life, with the remain-

---

3. Tennessee Code Annotated section 31–2–105, defining the parent-child relationship, states as follows:

 (a) If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:

 . . . .

 (2) In cases not covered by subdivision (a)(1), a person born out of wedlock is a

child of the mother. That person is also a child of the father, if:

 . . . .

 (B) The paternity is established by an adjudication before the death of the father *or is established thereafter by clear and convincing proof* . . . .

Tenn.Code Ann. § 31–2–105(a)(2)(B) (2001) (emphasis added).

der to his [son's] children" and resulting in the inclusion of a child legitimated by judicial decree as a part of the remainder class, the Court of Appeals in *Rose* held that a child legitimated after the death of a testator "came into existence" on the date of the judgment "just as though he had been then lawfully born." 1988 WL 69501, at *1 (relying upon *Scales,* 564 S.W.2d at 672). Even though Stalcup, who was fully aware that he was the father of Christopher Shaun Rose, had left his estate to his four legitimate children, a section of the Court of Appeals concluded that a child physically born before the execution of a will but not legitimated until after the execution of the will qualified as pretermitted under Tennessee Code Annotated section 32–3–103.[4] *Id.*

The facts in *Rose* are practically identical to this case. As in *Rose,* the Petitioner was born before the execution of her biological father's will. Also, the Decedent made no mention of the Petitioner in the will. The legal arguments are the same in each case. *See id.* at *1.

The Court of Appeals in the instant case rejected the Petitioner's claim and refused to adopt the rationale of *Rose* "and its misplaced reliance on *Scales.*" Citing *Rose* as merely "persuasive authority" rather than "controlling authority" because of its status as an unpublished opinion, the Court of Appeals held that by virtue of the plain language of the statute, the Petitioner was simply not "[a] child *born* after the making of" the will by the plain wording of the statute. *See* Tenn.Code Ann. § 32–3–103 (2001). The Court of Appeals did not perceive the Petitioner as in the class protected by the statute and held that she had been disinherited by necessary implication when she was not mentioned in the Decedent's will.

Over sixty-five years ago, the Court of Appeals, in *Marshall v. Marshall,* 25 Tenn. App. 309, 156 S.W.2d 449 (Tenn.Ct.App. 1941), ruled that an

> adopted child [physically born before the making of the will, but adopted subsequent to the making of the will] acquired the same legal status as if she had been born in lawful wedlock ... and that under [Tenn.Code Ann. § 32–3–103] she stands on the same footing as if she had been born to [the decedent] after the making of his will.

*Id.* at 453. Later, in *Couch v. Couch,* 35 Tenn.App. 464, 248 S.W.2d 327 (Tenn.Ct. App.1951), the Court of Appeals observed that a "majority of the courts so hold." *Id.* at 332 (citation omitted).

By use of the rationale in *Marshall,* the Petitioner argues that her "legal birth" would occur at the time of legitimation and, therefore, subsequent to the execution of her biological father's will. Tenn.Code Ann. § 32–3–103 (2001). She contends that the ruling in *Marshall* controls and submits that a holding to the contrary would unconstitutionally exclude a child born out of wedlock from the same rights and protections afforded to an adopted child or to a legitimate child. The Petitioner further asserts that because the *Rose* opinion was filed almost seventeen years ago and the legislature is presumed to know the interpretation which courts make of its enactments and has not expressed its disapproval of the ruling, we are bound to adhere to its rationale. *Hamby v. McDaniel,* 559 S.W.2d 774, 776 (Tenn.1977); *see also Jones v. D. Canale & Co.,* 652 S.W.2d 336, 337–38 (Tenn.1983)

---

4. In *Rose v. Stalcup,* 731 S.W.2d 541 (Tenn. Ct.App.1987), Stalcup's sister testified that her brother had informed her that "[Margaret Ann Rose] says I am the father of her child ... probably am, let her prove it," after which he raised a toast with his glass and smiled. *Id.* at 543.

("The refusal of our Legislature to overrule or modify by statute the *Memphis Fertilizer* decision persuades us today that its intent has not changed within the past fifty-three years; the fact that the Legislature has not expressed disapproval of a prior judicial construction of its statute is persuasive evidence of legislative adoption of the construction.").[5]

In response, the Defendants maintain that the statute was designed to effectuate the actual intent of the testator by supplying an "omitted intention on behalf of after born children inadvertently excluded." They argue that the interpretation offered by the Petitioner would subvert the will of the Decedent through the fiction of a belated "legal birth" and encourage a child born out of wedlock to delay his claim of legitimation and inheritance until after the death of a testator who had chosen not to make a disposition to the child under the will.

 In our view, the rules of statutory construction preclude the claim of the Petitioner. The Petitioner was not "born" subsequent to the execution of the will. To hold otherwise would defy the clear and unambiguous meaning of the term and expand its coverage through forced interpretation. The legislature expressed no intent to attach such a liberal construction to the word "born."

 Moreover, the Petitioner has been disinherited by implication. The word "pretermitted" means "to pass by," "to omit," "to disregard." L.S. Tellier, Annotation, *What, other than express disinheritance or bequest, avoids application of statute for benefit of pretermitted or after-born children,* 170 A.L.R. 1317 (1947). Pretermitted children are those passed by, omitted, or disregarded in the will of the parent or other ancestor. *Id.* By the pretermitted heir statute, our legislature changed the common law in order to create a rebuttable presumption that the omission of an after-born child from a will is unintentional. Tenn.Code Ann. § 32–3–103(a); *Young v. Young,* 48 Tenn. App. 645, 349 S.W.2d 545, 556 (Tenn.Ct. App.1961). Thus, the presumption is that a testator has no intention to exclude his after-born children from sharing in his estate. *Marshall,* 156 S.W.2d at 453. Most pretermission statutes, like that in this state, essentially provide that when a testator unintentionally fails to mention or make provision for an after-born child, the will is inoperative as to the omitted child and the heir may share in the estate in the same proportion as though the testator died intestate. *Id.;* 26B C.J.S. *Descent and Distribution* § 51 (2001). These statutes are inapplicable, however, when an intent to disinherit appears or is properly shown. *Fleming v. Phoenix Trust Co.,* 162 Tenn. 511, 39 S.W.2d 277, 278 (Tenn. 1931); 26B C.J.S. *Descent and Distribution* § 53 (2001). As explained by this Court in *Fleming,* "'[t]his statute was not designed to diminish or annul the exercise of the [parent's] testamentary power, but to supply an omitted intention in behalf of after-born children unintentionally excluded from participation in the estate." 39 S.W.2d at 277.

 The object of Tennessee's pretermitted heir statute is to prevent the unintentional disinheritance of an unborn child who was clearly not within the contemplation of the testator at the time he was disposing of his estate by will. If the testator intended to omit the child from the will, the pretermitted heir statute is

---

**5.** In both *Hamby* and *Jones,* however, we note that the legislative inaction doctrine was applied to "reported" decisions of this Court, not to an "unreported" opinion of the Court of Appeals.

inapplicable, regardless of whether the child is legitimate, born out of wedlock, or adopted.

 In *Fleming,* this Court noted as follows:

It is to be supposed, nothing else appearing, that the father would not intentionally exclude children not in existence when his estate was disposed of by will from a share of the estate. The presumption of the lack of intention to exclude after-born children, some courts call it a presumption, arises only in cases where the testator's intention is not expressed, or is not to be necessarily implied from the will. *If the will expressly or by implication discloses an intention to exclude children from a share in the estate, then the statute is not to be given effect.* The statute which has been quoted is open to no other reasonable construction.

39 S.W.2d at 277–78. Thus, the pretermitted heir statute only operates when the testator's intention is not expressed or is not necessarily implied from the will. *Id.*

 A testator, of course, has the power to make any division of his or her property, regardless of how capricious or apparently unnatural such division may appear. *See Burns v. Allen,* 93 Tenn. 149, 23 S.W. 111, 112 (Tenn.1893); *Bowerman v. Burris,* 138 Tenn. 220, 197 S.W. 490, 491 (Tenn.1917). A testator's failure to provide for a living child in his or her will is ordinarily equivalent to a disinheritance of that child. *Burns,* 23 S.W. at 112; *In re Estate of Eden,* 99 S.W.3d at 92–93. It is well-settled that a living child may be disinherited without naming the child on the face of the will. *In re Estate of Eden,* 99 S.W.3d at 93. In *Bowerman,* this Court emphasized the very limited nature of the statutory exception to the rule that a failure to provide for a living child constitutes disinheritance of that child:

The testator can dispose of his property as he wishes. He may give it all to one child, or divide it among them in such varying proportions as his judgment and affection may dictate. He may even pretermit one or more of his children, not even mentioning them in the will, and they cannot complain, or find therein any ground to attack on the will. The only instance in which the pretermission of a child is held as ground of relief is *in the case of an unborn child,* and that depends on the express terms of our statute, granting to such pretermitted child the same interest in the estate of his father as it would have taken in case of intestacy; the legatees and devisees being required to contribute proportionately to effect this result.

197 S.W. at 491 (emphasis added).

 A reviewing court will "seek to discover the intention of the testator and give effect to it unless it contravenes some rule of law or public policy." *Fisher v. Malmo,* 650 S.W.2d 43, 46 (Tenn.Ct.App. 1983). The power to disinherit is part of the power of testamentary disposition. *Bradford v. Leake,* 124 Tenn. 312, 137 S.W. 96, 98 (Tenn.1911).

 It is our view that instead of invoking the pretermitted heir statute to prevent her inadvertent disinheritance as an after-born child, the Petitioner, physically born prior to the Decedent's execution of the will, seeks to utilize the statute to circumvent his intent. Because the Decedent, if fully aware of his relationship to the Petitioner, made no effort to adopt or formally to legitimate her after the execution of his will, disinheritance by "implication so inevitable that an intention to the contrary cannot be supposed" was established. *McDonald v. Ledford,* 140 Tenn. 471, 205 S.W. 312, 314 (Tenn.1918) (quot-

ing *Bradford v. Bradford*, 6 Whart. 236, 244, 1841 WL 3996 (Pa.1841)).

■ The position of a child born out of wedlock may not be elevated over that of a child born in wedlock, as a living, legitimate child may be disinherited without naming the child on the face of the will. *Bowerman*, 197 S.W. at 491. An adherence to the ruling in *Rose* would permit a child born out of wedlock and omitted in a will to orchestrate his "legal birth" to avoid the established rules of will and statutory construction. The Court of Appeals properly rejected the Petitioner's construction of Tennessee Code Annotated section 32–3–103. The decision in *Rose* misapplies Tennessee Code Annotated section 32–3–103 and must, therefore, be overruled.

## EQUAL PROTECTION

■ Moreover, the expansive definition of "born" that exists for an adopted child who seeks to qualify as a pretermitted heir does not constitute a denial of equal protection under either the Fourteenth Amendment of the United States Constitution or article I, section 8 and article 11, section 8 of the Tennessee Constitution. The Petitioner cannot, therefore, prevail on constitutional grounds.

The United States Supreme Court examined the boundaries of equal protection as applied to the inheritance rights of a child born out of wedlock in *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). *Trimble* involved a challenge to a provision of the Illinois Probate Act under which a child born out of wedlock was denied an intestate share of her father's estate. *Id.* at 764–65, 97 S.Ct. 1459. Had the child been legitimated by judicial decree, she would have inherited her father's entire estate under Illinois law. *Id.* at 765, 97 S.Ct. 1459. The Illinois Supreme Court upheld the provision, concluding that it supported the state in-

terest in family relationships and established an accurate and efficient method of property disposal at death. *Id.* at 765, 97 S.Ct. 1459. The United States Supreme Court declared the Illinois statute unconstitutional, ruling that in order to survive an equal protection challenge, " 'at a minimum ... a statutory classification [must] bear some rational relationship to a legitimate state purpose.' " *Id.* at 766–67, 97 S.Ct. 1459 (quoting *Weber v. Aetna Cas. & Sur. Co.*, 406 U.S. 164, 172, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972)). The Court observed that the Illinois statute "bears only the most attenuated relationship to the asserted goal" of "the promotion of [legitimate] family relationships." *Id.* at 768, 97 S.Ct. 1459 (brackets in original). A year later, a plurality of the Court reaffirmed that classifications based on illegitimacy "are invalid under the Fourteenth Amendment if they are not substantially related to permissible state interests." *Lalli v. Lalli*, 439 U.S. 259, 265, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978).

■ The equal protection provisions of both the federal and state constitutions demand that persons similarly situated be treated alike. *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn.1993). Classifications based on illegitimacy are subjected to intermediate scrutiny, a heightened level of scrutiny, but not to the level of strict scrutiny. *See Gallaher v. Elam*, 104 S.W.3d 455, 461 (Tenn.2003). In cases involving equal protection challenges to laws discriminating on the basis of illegitimacy, "the Equal Protection Clause requires more than the mere incantation of a proper state purpose.... The constitutionality of [the] law 'depends upon the character of the discrimination and its relation to legitimate legislative aims.' " *Trimble*, 430 U.S. at 769, 97 S.Ct. 1459 (quoting *Mathews v.*

*Lucas,* 427 U.S. 495, 504, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976)).

The Petitioner asserts that the Court of Appeals, by opting not to follow *Rose,* has, in effect, expressed a preference for adopted children by enabling their legal birth to be the date of adoption as in *Marshall,* while refusing to extend the same benefit to children born out of wedlock. She argues that no rational state interest exists for this disparate treatment.

■■■■ "[S]tate statutes involving the disposition of property at death are not immunized from equal protection scrutiny." *Trimble,* 430 U.S. at 767 n. 12, 97 S.Ct. 1459. This state, however, has a significant interest in ensuring the orderly disposition of property at death. That interest can operate to "justify the imposition of special requirements upon [a child born out of wedlock] who asserts a right to inherit from her father, and, of course, it justifies the enforcement of generally applicable limitations on the time and the manner in which claims may be asserted." *Reed v. Campbell,* 476 U.S. 852, 855, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986).

Nevertheless, this issue does not turn on the status of illegitimacy. A child born out of wedlock before the execution of the will but omitted from the will would likewise be unable to avoid the established rules regarding disinheritance by necessary implication and would not be entitled to the benefit of the pretermitted heir statute. As to the concept of a "legal birth" being afforded only to adopted children, a rational basis exists for the disparate treatment under the pretermitted heir statute of an after-adopted child. Adoption creates a parent-child relationship and confers upon the person adopted all of the privileges of an in-wedlock child. Where, after executing a will, the testator takes affirmative action to create a parent-child relationship that previously did not exist, it is logical and appropriate to apply the presumption that the adoptive parent did not intend to disinherit the after-adopted child. *See Marshall,* 156 S.W.2d at 451–53. No similar presumption that the omission of the child is inadvertent can arise in favor of an out of wedlock child who is physically born before the execution of a will and the testator, fully aware of the circumstances, makes no effort thereafter to create a legal parent-child relationship by adoption or legitimation.

This view is not at odds with the ruling in *Marshall.* In each instance, the result depends upon the intent of the testator. In *Marshall,* the pretermitted heir statute did not apply because the testator's will, executed only two days before entry of the adoption decree and, by all appearances, in anticipation of that event, implied an intention to disinherit. The testator simply did not intend to make a bequest. *Id.* at 454. A petition by a child born out of wedlock to establish paternity after the death of the testator has no bearing on the intent of the testator. In our view, the equal protection challenge lacks merit.

## LEGITIMATION

The Petitioner also claims that even if the Court of Appeals properly determined that she was not a pretermitted heir of the Decedent and not entitled to recover a child's share of his estate, the dismissal of her claim for legitimation was erroneous. She argues that she is entitled to a judicial decree of legitimation so as to be eligible to inherit as a lineal descendant, "issue" or "heir" of her biological father. *See Banovic v. Davis,* 642 S.W.2d 153, 157 (Tenn.Ct. App.1982) ("[T]he words 'issue,' 'children,' 'heirs' and words of similar import in a will, are intended to refer to natural or blood relationships...."). The Petitioner asserts that as a legitimate child of the Decedent, she would possess other rights

and interests that do not depend upon the will. For example, if the Decedent's son should die without a will, then the Petitioner might inherit as his half-sister under the intestacy statute, Tennessee Code Annotated section 31–2–104.

The Court of Appeals' decision made reference to *J.E.W. v. Estate of John Doe*, 443 So.2d 249 (Fla.Dist.Ct.App.1983). In that case, a Florida court found that a child was not a pretermitted heir entitled to inherit a share of the decedent's estate, but concluded that the child had a right to bring a separate action to determine paternity. *Id.* at 251. The court determined that legitimation had a basis in the law separate and apart from an entitlement to inheritance.

█ This case is an appeal of the grant of a motion to dismiss. Thus, the allegations of fact in the petition must be taken as true. Our scope of review is de novo. While under these guidelines we are able to find that the Petitioner is not entitled to share in the estate of the Decedent as a pretermitted heir, we cannot hold that she is barred from a judicial decree of legitimation. The Petitioner did not present proof in the chancery court. The ruling on the motion to dismiss precluded that. No affirmative defenses were plead by the Defendants and no proof was offered on the question of paternity. The legitimation issue must, therefore, be remanded to the trial court to permit the Petitioner to present her claim pursuant to Tennessee Code Annotated section 31–2–105, the parent-child relationship statute, to demonstrate a relationship to the Decedent for purposes of establishing intestate succession rights.

## CONCLUSION

The judgment of the Court of Appeals is affirmed in part and reversed in part and remanded. The Petitioner is not a preter-

mitted heir of the Decedent. The legitimation issue is remanded to the chancery court. Costs of this appeal are assessed against Elizabeth Lanier, and her surety, for which execution may issue if necessary.