# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 19, 2014 Session

## JOSEPH IGOU, ET AL. V. VANDERBILT UNIVERSITY

**Appeal from the Circuit Court for Davidson County**
**No. 13C1647     Thomas W. Brothers, Judge**

_____

**No. M2013-02837-COA-R3-CV – Filed March 27, 2015**

_____

This appeal asks whether a wife's loss of consortium claim, brought pursuant to her husband's underlying health care liability action, is itself a health care liability action subject to the pre-suit notice provision of the Tennessee Health Care Liability Act. The trial court granted the hospital's motion to dismiss, finding that the wife's claim was a health care liability action under the Act and that she had failed to comply with the pre-suit notice provision. As an alternative ground for dismissal, the court also found that the wife had failed to file suit within the statute of limitation. We vacate the trial court's order of dismissal with prejudice and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, Jr., P.J., M.S., and RICHARD H. DINKINS J., joined.

Amy J. Farrar, Murfreesboro, Tennessee, and Matthew C. Hardin, Nashville, Tennessee, for the appellant, Ginger Igou.

Steven E. Anderson, Sara F. Reynolds, and Sean C. Wlodarczyk, Nashville, Tennessee, for the appellee, Vanderbilt University.

# OPINION

## I. BACKGROUND AND PROCEDURAL HISTORY

This appeal arises out of injuries suffered by Plaintiff, Joseph Igou, following a surgery at Vanderbilt University Medical Center on December 21, 2011. Mr. Igou, age 37 at the time of the surgery, had a history of ongoing medical issues related to ulcerative colitis that required him to undergo a total proctectomy and iloanal pouch procedure in April 2009. Mr. Igou continued to experience difficulties, and he eventually sought treatment from a colon and rectal surgeon, Alan Herline, M.D., at Vanderbilt. Dr. Herline recommended that the pouch be removed and Mr. Igou utilize an ileostomy going forward.

This recommendation led to the December 21, 2011 procedure that gave rise to Mr. Igou's injuries. Mr. Igou alleges that Dr. Herline made a surgical error that resulted in a large hole being burned into his urethra. Mr. Igou claims that the injury was compounded by Dr. Herline's failure to recognize the error. The hospital discharged Mr. Igou on December 24, 2011, but he was forced to return on the following day, at which point his injury was discovered. Mr. Igou claims to suffer from continued injury and impotence as a result of the procedure.

Written notice of Mr. Igou's claims against Vanderbilt was provided on December 12, 2012, under Tennessee Code Annotated § 29-26-121 (2012) (the "pre-suit notice provision") of the Tennessee Health Care Liability Act ("THCLA"). The notice letter identified Mr. Igou as the claimant and stated that he was "asserting a potential claim for medical malpractice" against Vanderbilt. The notice also included all other documentation necessary to Mr. Igou's compliance with the pre-suit notice provision: his full name, address, and birthdate, as both the patient whose treatment was at issue and the claimant; the name and address of the attorney sending notice; a list of the name and address of all providers being sent notice; and a HIPAA[1] compliant medical authorization, permitting access to Mr. Igou's medical records.

When Mr. Igou's complaint was filed on April 18, 2013, his wife, Ginger Igou, joined him as co-Plaintiff, asserting claims for "damages related to her responsibility for Mr. Igou's medical bills, expenses and travel costs," as well as a claim for loss of consortium. However, the December 12, 2012 notice letter made no mention of Mrs. Igou as a potential claimant nor did it discuss any of her potential claims. Alongside the complaint, a certificate of good faith was filed in accordance with Tennessee Code Annotated § 29-26-122 (2012), stating that the Igous had consulted with an expert who

---

[1] Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104–191, 110 Stat.1936 (codified throughout 18 U.S.C.A. (2000), 29 U.S.C.A. (1998), 42 U.S.C.A. (2011), and in 45 C.F.R. §§ 160 & 164 (2011)).

believed there was "a good faith basis to maintain the action consistent with [Tennessee Code Annotated] § 29-26-115 [(2012)]."

Vanderbilt's attorneys filed an answer to the complaint and a motion to dismiss Mrs. Igou's claims on May 16, 2013. They argued that because Mrs. Igou had not provided notice as a potential claimant in the December 12, 2011 pre-suit notice letter, her claims must be dismissed for failure to comply with the THCLA. As an additional ground for dismissal, Vanderbilt argued that Mrs. Igou's claims failed to comply with the applicable one-year statute of limitation, Tennessee Code Annotated § 29-26-116 (2012), because the claims arose in December 2011 and Mrs. Igou had not filed suit until April 2013. Although Tennessee Code Annotated § 29-26-121 provides for a 120-day extension of the statute of limitation, the motion contended that Mrs. Igou was not eligible for such an extension because she had failed to comply with the pre-suit notice provision.

In response to Vanderbilt's motion to dismiss, Mrs. Igou agreed to the dismissal of her "individual claim as to medical bills, expenses and travel costs." Notice of nonsuit of those claims was filed on the same day. This left only Mrs. Igou's claim for loss of consortium. As to that claim, Mrs. Igou argued that her loss of consortium claim was derivative of Mr. Igou's claims and, therefore, should be allowed to continue under the pre-suit notice he provided.

The trial court entered an order of voluntary non-suit of Mrs. Igou's claims related to medical bills, expenses, and travel costs, and conducted a hearing on Vanderbilt's motion to dismiss on August 30, 2013. In an oral ruling, the trial court found that Mrs. Igou's loss of consortium claim was subject to the pre-suit notice provision and dismissed Mrs. Igou's claim for failure to comply with the THCLA under Tennessee Rule of Civil Procedure 12.02(6). As a second basis for dismissal of Mrs. Igou's loss of consortium claim, the court found that the notice provided by Mr. Igou was insufficient to toll the statute of limitation for Mrs. Igou's claim and, therefore, she had failed to bring suit in a timely manner. The trial court entered an order confirming its ruling on September 27, 2013.

Mrs. Igou responded by filing a motion on October 28, 2013, seeking certification of the trial court's September 27, 2013 order as final under Tennessee Rule of Civil Procedure 54.02. The trial court granted the motion on November 25, 2013, and Mrs. Igou timely appealed.

Mrs. Igou raises several issues on appeal: (1) whether her claim for loss of consortium is subject to the pre-suit notice provision of the THCLA; (2) whether, assuming the pre-suit notice provision does apply, her claim should nonetheless be allowed to proceed because she substantially complied with the THCLA's requirements; (3) whether extraordinary cause exists to excuse Mrs. Igou's non-compliance with the

THCLA; (4) whether dismissal of Mrs. Igou's suit is the appropriate remedy for failure to comply with the pre-suit notice provision; and (5) whether Mrs. Igou's claims were filed within the relevant statute of limitation.

## II. ANALYSIS

A motion to dismiss under Tennessee Rule of Civil Procedure 12.02(6) tests "the legal sufficiency of the complaint, not the strength of the plaintiff's proof." *Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007). The trial court looks solely to the complaint, focusing on substance over form, in deciding a motion to dismiss. *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 54 (Tenn. Ct. App. 2004). Dismissal "is warranted only when the alleged facts will not entitle the plaintiff to relief or when the complaint is totally lacking in clarity and specificity." *Id.*

Our review of a dismissal under Rule 12.02(6) construes the complaint liberally in favor of the plaintiff and accepts all relevant and material allegations contained in the complaint as true. *Lainer*, 229 S.W.3d at 660. We review the trial court's legal conclusions de novo, with no presumption of correctness. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999).

### A. Applicability of the THCLA to Mrs. Igou's Loss of Consortium Claim

Mrs. Igou's argument that her loss of consortium claim is not subject to the procedural requirements of the THCLA is two-fold. First, she argues that her claim for loss of consortium is not a "health care liability action" as defined by the THCLA. Second, even if her claim is a health care liability action, Mrs. Igou contends that as a derivative action, Mr. Igou's pre-suit notice also serves as notice of her loss of consortium claim. We address each of Mrs. Igou's arguments in turn.

In the context of a personal injury action,[2] as is the case here, loss of consortium is a distinct cause of action created by statute and held by the spouse of the injured party. Tenn. Code Ann. § 25-1-106 (2000) ("There shall exist in cases where such damages are proved by a spouse, a right to recover for loss of consortium."). We have previously concluded that:

---

[2] The nature of a loss of consortium claim in Tennessee turns on the context in which it is asserted. In a wrongful death action, loss of consortium is an element of damages awardable under the wrongful death statute as part of the pecuniary value of the decedent's life. *Taylor v. Beard*, 104 S.W.3d 507, 509 (Tenn. 2003); *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 601 (Tenn. 1999) ("We hold that consortium-type damages may be considered when calculating the pecuniary value of a deceased's life. This holding does not create a new cause of action but merely refines the term 'pecuniary value.'"); *see also* Tenn. Code Ann. § 20-5-113 (2009).

Although a claim for loss of consortium is "derivative" in the sense that the injuries to a spouse are an element which must be proved, we are of the opinion that the right to recover for loss of consortium is a right independent of the spouse's right to recover for the injuries themselves. It is a cause of action separate from plaintiff's action for bodily injury, based on losses to [one's spouse] caused by physical injuries to [the other].

*Strauss v. Ramada Inn E.*, No. 02A01-9211-CV-00307, 1994 WL 198882, at *2 (Tenn. Ct. App. May 23, 1994) (citations omitted); *see also Hunley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 557 (Tenn. 1999) ("[A] spouse's loss of consortium claim is a distinct cause of action vested solely in the spouse."). Thus, the defendant must actually be liable for the spouse's injuries before the derivative plaintiff may recover for loss of consortium. *Kinzer v. Metro. Gov't of Nashville*, 451 F. Supp. 2d 931, 935 (M.D. Tenn. 2006).

Whether Mrs. Igou's claim for loss of consortium is a "health care liability action" under the THCLA is a question of statutory interpretation subject to de novo review. *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013). When called upon to answer a question of statutory interpretation, our goal "'is to carry out legislative intent without broadening or restricting the statute beyond its intended scope.'" *Harris v. Haynes*, 445 S.W.3d 143, 146 (Tenn. 2014) (quoting *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013)). We start by looking to the language of the statute, and if it is unambiguous, we apply its plain meaning and look no further. *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 517 (Tenn. 2014); *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). In doing so, we must avoid any "'forced or subtle construction that would limit or extend the meaning of the language.'" *Keen v. State*, 398 S.W.3d 594, 610 (Tenn. 2012) (quoting *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)). Only when the language of a statute is ambiguous do we turn to the broader statutory scheme, legislative history, or other sources for clarity in meaning. *Thurmond*, 433 S.W.3d at 517. A statute is ambiguous where it "can reasonably have more than one meaning." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010) (footnote omitted).

The THCLA defines a "health care liability action" as:

[A]ny civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based.

Tenn. Code Ann. § 29-26-101(a)(1) (2012). At least 60 days before filing a health care liability action, "[a]ny person, or that person's authorized agent, . . . shall give written

notice of the potential claim to each health care provider that will be named as a defendant." *Id*. § 29-26-121(a)(1) (Supp. 2014). The pre-suit notice must include:

> (A) The full name and date of birth of the patient whose treatment is at issue;
>
> (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
>
> (C) The name and address of the attorney sending the notice, if applicable;
>
> (D) A list of the name and address of all providers being sent a notice; and
>
> (E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

*Id*. § 29-26-121(a)(2).

Accordingly, the plain language of the THCLA designates a potential claim as a "health care liability action" subject to the pre-suit notice provision if: (1) it is a civil action; (2) the claim is against a health care provider;[3] and (3) the harm complained of

---

[3] The THCLA defines a "health care provider" as:

> (A) A health care practitioner licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68, including, but not limited to, medical resident physicians, interns, and fellows participating in a training program of one of the accredited medical schools or of one of such medical school's affiliated teaching hospitals in Tennessee;
>
> (B) A nongovernmental health care facility licensed under title 68, chapter 11;
>
> (C) A nongovernmental health facility licensed under the Mental Health, Developmental Disability, and Personal Support Services Licensure Law, compiled in title 33, chapter 2, part 4;
>
> (D) The employee of a health care provider involved in the provision of health care services, including, but not limited to, physicians, nurses, licensed practical nurses, advance practice nurses, physician assistants, nursing technicians, pharmacy technicians, orderlies, certified nursing assistants, technicians and those physicians and nurses employed by a governmental health facility; or

arises from "the provision of, or failure to provide, health care services."[4]  Tenn. Code Ann. § 29-26-101(a)(1).  Mrs. Igou's claim for loss of consortium fits this definition: hers is a civil action; it is asserted against Vanderbilt, a "health care provider" under the THCLA; and her loss of consortium claim arises from Dr. Herline's alleged negligence in treating Mr. Igou and his failure to recognize the injuries he had caused.

Nonetheless, Mrs. Igou argues that certain other provisions of the THCLA indicate that her loss of consortium claim is not a health care liability action subject to the pre-suit notice requirement.  Although we need not look to the broader statutory scheme where the plain language of the THCLA defines Mrs. Igou's claim as a health care liability action, *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 517 (Tenn. 2014), we cannot consider the language of a statute in a "'vacuum'" and must refer to its entirety to ensure "'that its component parts are consistent and reasonable.'"  *State v. Aguilar*, 437 S.W.3d 889, 905 (Tenn. Crim. App. 2013) (quoting *In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009)); *see also State v. Fleming*, 19 S.W.3d 195, 197 (Tenn. 2000) ("We determine legislative intent from the natural and ordinary meaning of the statutory language within the context of the entire statute . . . ."); *Faust v. Metro. Gov't of Nashville*, 206 S.W.3d 475, 490 (Tenn. Ct. App. 2006) (concluding that statutory provisions that are part of the same act must be read *in pari materia* and construed as a whole).

Mrs. Igou first directs our attention to Tennessee Code Annotated § 29-26-101(c), which states, "[a]ny [health care liability] action or claim is subject to this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint . . . ," for the proposition that her loss of consortium claim is a separate claim

---

(E) A professional corporation or professional limited liability company established pursuant to title 48, a registered limited liability partnership rendering professional services under title 61 and which consists of one (1) or more health care practitioners licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68, or any legal entity that is not itself required to be licensed but which employs one or more health care practitioners licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68.

Tenn. Code Ann. § 29-26-101(a)(2).

[4] "Health care services" under the THCLA include:

care by health care providers, which includes care by physicians, nurses, licensed practical nurses, pharmacists, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and other agents, employees and representatives of the provider, and also includes staffing, custodial or basic care, positioning, hydration and similar patient services.

Tenn. Code Ann. § 29-26-101(b).

not subject to the pre-suit notice provision. This is a misreading of the statute. Although Tennessee Code Annotated § 29-26-101(c) contemplates that a complaint may assert other claims that are not subject to the pre-suit notice provision, it does not preclude the possibility of more than one claim or cause of action for health care liability being included in a single "health care liability action."

In arguing that certain claims arising out of the same facts as a health care liability action are exempted from the pre-suit notice provision, Mrs. Igou cites the Sixth Circuit Court of Appeals' recent decision in *Shuler v. Garrett*, 743 F.3d 170 (6th Cir. 2014). In *Shuler*, the Sixth Circuit distinguished between a claim for medical malpractice, which was subject to the requirements of the Tennessee Medical Malpractice Act ("TMMA")— the THCLA's statutory predecessor—and a claim for medical battery, which was not. *Id.* at 176. However, *Shuler* involves a claim that was brought on January 3, 2012, before the adoption of the THCLA and the substitution of the term "health care liability action" with "medical malpractice."[5] *See id.* at 172; *see also* 2012 Tenn. Pub. Acts 932-37 (ch. 798); 2011 Tenn. Pub. Acts 1505-15 (ch. 510). Because it interprets a different statute and definition, we find *Shuler* has no bearing on our analysis in this case.[6]

Next, Mrs. Igou points to Tennessee Code Annotated § 29-26-121(d)(1) which states, in pertinent part:

> All parties in an action covered by this section shall be entitled to obtain complete copies of the *claimant's medical records* from any other provider receiving notice. A party shall provide a copy of the specified portions of the *claimant's medical records* as of the date of the receipt of a legally authorized written request for the records within thirty (30) days thereafter. The claimant complies with this requirement by providing the providers with the authorized HIPAA compliant medical authorization required to accompany the notice.

---

[5] A commentator has speculated that this change in terminology was intended to broaden the ambit of the Act by "virtually eliminat[ing] the distinction between 'ordinary negligence' and medical malpractice for all claims against health care providers." Clinton L. Kelly, *Medical Malpractice: Five Years After Going Under the Knife, Med Mal Law Is Still Feeling the Effects*, Tenn. B.J., Nov. 2013, at 13-14 (2013).

[6] By citing *Shuler*, Mrs. Igou urges a similar approach to that used in *Ellithorpe v. Weismark*, No. M2014-00279-COA-R3-CV, 2014 WL 5511773 (Tenn. Ct. App. Sept. 16, 2014), *perm. to appeal granted*, (Tenn. Feb. 13, 2015). In *Ellithorpe*, we looked to a case interpreting the term "medical malpractice claim" under the Tennessee Medical Malpractice Act to determine what constitutes a "health care liability action" under the THCLA. *Ellithorpe*, 2014 WL 5511773, at *6-7. However, we find the THCLA's definition of "health care liability action" conclusive. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 228 (2012) ("It is very rare that a defined meaning can be replaced with another permissible meaning of the word on the basis of other textual indications; the definition is virtually conclusive.").

(emphasis added). Mrs. Igou argues that construing her as a "claimant" for purposes of the THCLA pre-suit notice provision would lead to an absurd result; she would be required to provide Vanderbilt with her own medical records when it is her husband's treatment that is at issue.

"[W]hen the language [of a statute] produces an absurd or incongruous result when applied in specific factual situations, the intent of the Legislature will prevail over the literal language of the statute." *Bus. Brokerage Ctr. v. Dixon*, 874 S.W.2d 1, 5 (Tenn. 1994); *see also State v. Potter*, 61 S.W.3d 348, 350 (Tenn. Crim. App. 2001) ("We give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope and without interpreting it in such a way to yield an absurd result."). Under the absurdity doctrine, "[a] provision may be either disregarded or judicially corrected as an error (when the correction is textually simple) if failing to do so would result in a disposition that no reasonable person could approve." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 234 (2012). In light of the application of the THCLA to this particular factual situation, we find judicial correction would be appropriate.

Where we are confronted with an apparent error on the face of a statutory provision, we may refer to other parts of the statute in seeking its correction. *State v. Temple*, 220 S.W. 1084, 1086 (Tenn. 1920). The pre-suit notice provision of the THCLA contemplates that a health care liability action may be brought by someone other than the patient whose medical treatment is at issue. In providing pre-suit notice, the THCLA requires, in part, "[t]he name and address of the claimant authorizing the notice *and the relationship to the patient, if the notice is not sent by the patient*." Tenn. Code Ann. § 29-26-121(a)(2)(B) (emphasis added). There being no apparent reason for the pre-suit notice provision[7] to require the release of a non-patient claimant's medical records, we conclude that the reference to a "claimant's medical records" in Tennessee Code Annotated § 29-26-121(d)(1) should be read as the medical records of "the patient whose treatment is at issue."

Because the plain language of the THCLA leads us to the conclusion that Mrs. Igou's loss of consortium claim is a health care liability action under the Act, we next address Mrs. Igou's argument that her claim nonetheless satisfies the pre-suit notice provision. Mrs. Igou argues that the pre-suit notice provided by Mr. Igou also satisfies the pre-suit notice requirement for her loss of consortium claim because her claim is derivative to Mr. Igou's health care liability action.

The derivative nature of Mrs. Igou's claim brings it squarely under the pre-suit notice provision of the THCLA. Mrs. Igou must prove that Vanderbilt is liable for

---

[7] The pre-suit notice requirement does not specify that the HIPAA compliant medical authorization be for the medical records of the patient. *See* Tenn. Code Ann. § 29-26-121(a)(2) (Supp. 2014).

Mr. Igou's injuries as an element of her claim. *Kinzer*, 451 F. Supp. 2d at 935; *see also Strauss*, 1994 WL 198882, at \*2. Mr. Igou's injuries undoubtedly arise from "the provision of, or failure to provide, health care services," Tennessee Code Annotated § 29-26-101(a)(1). Therefore, Mrs. Igou's claim meets the third requirement for a "health care liability action" under the THCLA. At the same time, Mrs. Igou's loss of consortium claim is also a distinct cause of action vested solely in her and separate from Mr. Igou's claims. *Hunley*, 38 S.W.3d at 557. Not only is Mrs. Igou's claim a distinct cause of action, but more importantly for purposes of the THCLA, she is also a separate claimant required to comply with the pre-suit notice provision.

Our conclusion that Mrs. Igou is a separate claimant required to comply with the pre-suit notice provision is supported by the plain language of the THCLA. The pre-suit notice provision provides, in part, "If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state *whether each party* has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2)." Tenn. Code Ann. § 29-26-121(b) (emphasis added). Although Mrs. Igou's complaint made such representations, she did not actually provide pre-suit notice of her loss of consortium claim. It is uncontested that Mrs. Igou was not identified as a potential claimant in the pre-suit notice letter.

Because we conclude that Mrs. Igou's claims are subject to the THCLA pre-suit notice provision, and the notice provided by Mr. Igou did not satisfy the pre-suit notice provision as to her claim, we must next consider whether her failure to comply with the statute may be nevertheless excused.

## B. Substantial Compliance with the Pre-Suit Notice Provision

Mrs. Igou argues that, even if her loss of consortium claim is subject to the pre-suit notice provision of the THCLA, her claim should not be dismissed because she substantially complied with its requirements. The rationale behind this argument is that the notice provided by Mr. Igou should have put Vanderbilt on notice of Mrs. Igou's potential loss of consortium claim as well. To decide this question we must first determine whether Mrs. Igou's failure to identify herself as a claimant under the pre-suit notice provision is subject to strict or substantial compliance.

The pre-suit notice provision provides that "any person . . . asserting a potential claim for health care liability *shall* give written notice of the potential claim . . . ." Tenn. Code Ann. § 29-26-121(a)(1) (emphasis added). In turn, the THCLA requires that such "notice *shall* include" certain information, including "[t]he name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient." *Id*. § 29-26-121(a)(2) (emphasis added). "To determine whether the use of the word 'shall' in a statute is mandatory or merely directory, we look to see 'whether the prescribed mode of action is of the essence of the thing to be accomplished.'" *Myers*

*v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 309 (Tenn. 2012) (quoting 3 Norman J. Singer & J. D. Singer, *Statutes and Statutory Construction* § 57:2 (7th ed. 2008)).

Our supreme court has found that the essence of the pre-suit notice provision is that a defendant be given notice of a health care liability action before suit is filed. *See id.* In *Myers*, a case where no pre-suit notice was provided, the supreme court held that, because the requirement to give notice is mandatory, it may only be satisfied through strict compliance. *Id.* at 310. On the other hand, where notice has been provided, a complaint that does not satisfy the content requirements of the pre-suit notice provision may survive through substantial compliance. *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs.*, 418 S.W.3d 547, 555 (Tenn. 2013).

Here, although Vanderbilt was provided with pre-suit notice of Mr. Igou's claims, they did not receive notice that Mrs. Igou would be asserting her own claims against them prior to the filing of the complaint. Because Vanderbilt did not have notice of Mrs. Igou's health care liability claim, they were not afforded an opportunity to investigate or settle the claim before suit was filed. *Hinkle v. Kindred Hosp.*, No. M2010-02499-COA-R3-CV, 2012 WL 3799215, at *6 (Tenn. Ct. App. Aug. 31, 2012); *DePue v. Schroeder*, No. E2010-00504-COA-R3-CV, 2011 WL 538865, at *7 (Tenn. Ct. App. Feb. 15, 2011). This case is not an example of a plaintiff's failure to comply with some technical aspect of the pre-suit notice provision as in *Stevens*. Rather, it represents a complete lack of notice akin to our supreme court's recent decision in *Foster v. Chiles*, __ S.W.3d __, 2015 WL 343872 (Tenn. 2015). In *Foster*, our supreme court affirmed the dismissal of the plaintiffs' complaint after they had originally complied with the pre-suit notice provision, subsequently dismissed their complaint, and then re-filed suit without providing a second notice. *Id.* at *5.

Consequently, even assuming Mrs. Igou substantially complied with the pre-suit notice provision, her claim would not be saved from dismissal. Pre-suit notice is mandatory for each "person asserting a potential claim for health care liability." *See* Tenn. Code Ann. § 29-26-121(a)(1). Only strict compliance satisfies this requirement. *Myers*, 382 S.W.3d at 310.

## C. Extraordinary Cause to Excuse Compliance with the Pre-Suit Notice Provision

In addition to contending that she substantially complied with the statute, Mrs. Igou argues that extraordinary cause excuses her non-compliance with the pre-suit notice provision. Whether Mrs. Igou has sufficiently demonstrated extraordinary cause to excuse her non-compliance with the pre-suit notice provision is a mixed question of law and fact. *Myers*, 382 S.W.3d at 307. Because this case is before us on a motion to dismiss under Tennessee Rule of Civil Procedure 12.02(6), we accept all facts asserted in the plaintiff's complaint as true, and construe all reasonable inferences in her favor. *See*

*Lanier*, 229 S.W.3d at 660. Our review of the trial court's legal conclusion is de novo, with no presumption of correctness. *Id.*

The trial court's decision to excuse compliance with the pre-suit notice provision is reviewed under an abuse of discretion standard. *Myers*, 382 S.W.3d at 308. A trial court abuses its discretion where it: (1) applies an incorrect legal standard; (2) reaches a decision that is illogical; (3) bases its decision on a clearly erroneous assessment of the evidence; or (4) employs reasoning that causes an injustice to the complaining party. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211-12 (Tenn. Ct. App. 2002) (citing *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *In re Paul's Bonding Co.*, 62 S.W.3d 187, 194 (Tenn. Crim. App. 2001); *Buckner v. Hassell*, 44 S.W.3d 78, 83 (Tenn. Ct. App. 2000); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

Under the pre-suit notice provision "[t]he court has discretion to excuse compliance with this section only for extraordinary cause shown." Tenn. Code Ann. § 29-26-121(b). The THCLA does not define extraordinary cause. *Myers*, 382 S.W.3d at 310. Rather, we have previously directed a trial court to examine the totality of the circumstances to determine whether extraordinary cause exists. *Hawkins v. Martin*, No. W2011-02318-COA-R3-CV, 2012 WL 3007680, at *7 (Tenn. Ct. App. July 24, 2012). Our supreme court has defined "extraordinary cause" as "going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable." *Myers*, 382 S.W.3d at 311. Possible examples of extraordinary cause could include "illness of the plaintiff's lawyer, a death in that lawyer's immediate family, [or] illness or death of the plaintiff's expert in the days before the filing became necessary." *Id.* (citing John A. Day, *Med Mal Makeover 2009 Act Improves on '08; The New New Medical Malpractice Notice and Certificate of Good Faith Statutes,* Tenn. B.J., July 2009, at 17 (2009)). Attorney oversight, absent unique circumstances, does not constitute extraordinary cause. *Hawkins*, 2012 WL 3007680, at *6.

Mrs. Igou argues that extraordinary cause existed to excuse her compliance with the pre-suit notice provision because: (1) the terms of the THCLA do not expressly subject loss of consortium claims to the procedural requirements of the statute; (2) this is an issue of first impression in Tennessee; and (3) Vanderbilt received proper notice of Mr. Igou's claims. None of these contentions rise to the level of extraordinary cause.

The THCLA does not expressly mention any particular type of claim subject to its requirements. Rather, one must refer to the definition of "health care liability action," found at Tennessee Code Annotated § 29-26-101(a)(1), to determine whether a claim falls under the THCLA. The absence of a comprehensive list of causes of action subject to the THCLA does not constitute extraordinary cause excusing non-compliance with the pre-suit notice provision.

As to Mrs. Igou's second argument, an issue of first impression may constitute extraordinary cause in some circumstances. *See Brown v. Samples*, No. E2013-00799-COA-R3-CV, 2014 WL 1713773 (Tenn. Ct. App. Feb. 3, 2014). In *Brown*, the State argued that the plaintiffs failed to comply with the pre-suit notice provision because, although the plaintiffs did provide pre-suit notice to some State employees, they did not provide notice to the Attorney General's office or the Division of Claims Administration. *Id.* at *4. The Tennessee Claims Commission denied the State's motion to dismiss, finding that there was "no statutory authority requiring that pre-suit notice as to the State be served upon" the Attorney General's office or the Division of Claims Administration. *Id.* at *1. At the time the plaintiffs filed pre-suit notice, the term "health care provider" was not defined by the THCLA, making it unclear as to whether the plaintiffs were required to provide pre-suit notice to the State. *See Id.* at *7. We also found that the plain language of the THCLA did not indicate the identity of the State's agent for service of process in health care liability actions before the Commission. *Id.* at *6. We upheld the Commission's decision rejecting the State's argument and finding extraordinary cause to excuse compliance with the pre-suit notice provision where the state of the law "was unsettled, unclear, and potentially confusing." *Id.* at *9.

We find the facts in *Brown* distinguishable from the facts present here. Whereas the *Brown* plaintiffs could not refer to the THCLA to ascertain the meaning of the term "health care provider" or to identify the State's agent for service of process, Mrs. Igou did have such an opportunity. *See id.* at *6-7. When Mr. Igou filed his pre-suit notice letter, the THCLA provided a definition of the term "health care liability action," and the plain language of that definition indicated that Mrs. Igou's loss of consortium claim was also subject to the pre-suit notice provision. *See* Tenn. Code Ann. § 29-26-101(a)(1). The difference in the two cases is between a complete absence of guidance and a misreading of statutory language. The latter does not constitute extraordinary cause excusing non-compliance with the pre-suit notice provision.

Finally, Mrs. Igou's third argument is simply a restatement of her argument that she substantially complied with the THCLA's requirements. The fact that another claimant complied with the pre-suit notice requirement does not constitute extraordinary cause to excuse Mrs. Igou's noncompliance. The trial court did not abuse its discretion in declining to find extraordinary cause justifying Mrs. Igou's non-compliance with the pre-suit notice provision.

## D. The Consequences for Failure to Comply with the Pre-Suit Notice Provision

Mrs. Igou argues that her failure to comply with the pre-suit notice provision does not necessitate dismissal of her loss of consortium claim. This issue is quickly resolved by reference to our supreme court's decisions in *Foster* and *Stevens*. Although the pre-

suit notice provision does not expressly provide a penalty for noncompliance,[8] the Court found dismissal without prejudice to be the appropriate remedy. *Foster*, 2015 WL 343872, at \*4; *Stevens*, 418 S.W.3d at 560-61. However, the trial court's dismissal of Mrs. Igou's claim did not rest solely on the ground that she had failed to comply with the pre-suit notice provision. The court also found that she had failed to bring her claim within the relevant statute of limitations, resulting in the dismissal of her claim "on the merits."

## E. Mrs. Igou's Compliance with the Statute of Limitations

To be timely filed, Mrs. Igou's claim must comply with the THCLA's statute of limitations provision, Tennessee Code Annotated § 29-26-116. That section requires health care liability actions to be filed according to Tennessee Code Annotated § 28-3-104(a) (2000). Tennessee Code Annotated § 28-3-104(a) requires actions for "injuries to the person" to be "commenced within one (1) year *after the cause of action accrued*." Tenn. Code Ann. § 28-3-104(a) (emphasis added). Vanderbilt argued, and the trial court apparently agreed, that Mrs. Igou's loss of consortium claim accrued on December 25, 2011, when Mr. Igou returned to Vanderbilt hospital with symptoms of abnormal urination, pain, and fever. If that was the case, Mrs. Igou's claim would be untimely.

In a loss of consortium claim, a deprived spouse's[9] injury is the loss of the impaired spouse's tangible services and intangible benefits, including companionship, affection, love, and sexual relations. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, No. W2013-00804-COA-R9-CV, 2014 WL 903142, at \*16 (Tenn. Ct. App. Mar. 10, 2014) (quoting *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 602 (Tenn. 1999)). For purposes of the statute of limitations, the claim accrues when the deprived spouse actually experiences the loss of the impaired spouse's services and benefits. *Roberts v. Berry*, 541 F.2d 607, 610 (6th Cir. 1976);[10] *see Broidioi v. Hall*, 218 S.W.2d

---

[8] *Compare* Tenn. Code Ann. § 29-26-121, *with* Tenn. Code Ann. § 29-26-122(c) ("The failure of a plaintiff to file a certificate of good faith in compliance with this section shall, upon motion, make the action subject to dismissal with prejudice.").

[9] Legal commentary on loss of consortium claims, including the Restatement of Torts (Second), typically refers to the spouse who suffers bodily injury as "the impaired spouse," and the spouse who suffers a loss of services and society as the "deprived spouse." We adopt this nomenclature.

[10] We recognize the limitations on using alienation of affection decisions for authority on the commencement of the statute of limitations period in loss of consortium actions. However, "it seems fair to say from the cases dealing with the several specific kinds of action in which loss of consortium or services is the gist of the action, that, in general, where a cause of action is rested strictly upon loss of services or consortium, sustained by the plaintiff as a consequence of the wrongful acts of the defendant operating directly upon the plaintiff's [spouse], such cause of action accrues and the statute of limitations begins to run against it at the time the loss, or some element of the loss, of services or consortium is actually sustained, rather than at the time of the defendant's wrongful act or of the direct injury to the

236, 238 (Tenn. 1949) (stating that the statute of limitations begins to run "from the conduct of the erring spouse," or when the other spouse knows he has a cause of action); C.T. Foster, Annotation, *When Statute of Limitations Begins to Run Against Action for Loss of Services or Consortium*, 173 A.L.R. 750, § 8 (2014); *see also Teeters v. Currey*, 518 S.W.2d 512, 517 (1974) (holding that the statute of limitations is tolled when the plaintiff discovers or should have discovered the injury). However, the date the loss is experienced may be difficult to determine. *See Broidioi*, 218 S.W.2d at 238 ("'[L]oss of consortium,' which is the basis of the action, is gradual and not in the usual case, to be fixed as having occurred at a specific date or instant.").

In some cases, "the defendant's wrongful act," the injury to the spouse, and the loss of consortium "coincide or are practically simultaneous." Foster, 173 A.L.R. 750, § 4. In those cases, the impaired spouse's injury or the deprived spouse's loss of services defines the commencement of the statute of limitations period. *Id.* In other cases, the loss of consortium may not occur until sometime after the impaired spouse is injured or after the impaired spouse discovers his injury. *See Bodne v. Austin*, 2 S.W.2d 104, 105 (Tenn. 1928) (recognizing that injuries could have occurred after the defendant's wrongful act, but the plaintiff only averred that the injuries occurred soon after the negligent operation); *see also* Foster, 173 A.L.R. 750, § 8 (stating that *Bodne* suggests recognition of the view that the statute of limitations begins to run only when the loss of consortium actually occurs).

In *Reichelt v. Johns-Manville Corp.*, 733 P.2d 530 (Wash. 1987), a wife brought a loss of consortium claim after her husband sustained injuries caused by asbestos exposure. *Reichelt*, 733 P.2d at 531. A loss of consortium claim is also "a separate cause of action in Washington," so the court concluded, "it logically follows that the statute of limitations governing [the wife's] claim should begin to run when she experienced her injury, not when her husband knew of his injury." *Id.* at 776. To determine when the statute of limitations began, the court looked to the time "when [the wife] began to lose her husband's consortium." *Id.* at 777. However, there was "no factual showing regarding her loss." *Id.* Instead, the defendants in that case argued that, "the deprived spouse's loss of consortium claim accrues, as a matter of law, at the time the impaired spouse's claim arises." *Id.* Because the record did not indicate when "the husband's condition became functionally limiting with regard to his society and services," the court remanded the case to the trial court for further proceedings. *Id.* at 777-78.

Turning to the complaint at issue here, the Igous allege that Dr. Herline "indicated to Mr. Igou that his injury was a cautery (burn) injury from the surgery on 12/21/2011 in his progress note of 12/26/2011." Additionally, on December 27, 2011, a second Vanderbilt physician told Mr. Igou that the injury would "heal spontaneously." In late

---

third person." C.T. Foster, Annotation, *When Statute of Limitations Begins to Run Against Action for Loss of Services or Consortium*, 173 A.L.R. 750, § 4 (2014).

January 2012, the Igous were told that Mr. Igou had "a very serious condition," but there were treatment options available. Mr. Igou had an unsuccessful surgery in late March 2012 to treat his injury. Then, the complaint states that Mr. Igou "demonstrated significant erectile dysfunction" in July 2012. He underwent another surgery on July 19, 2012, which "had a more positive result."

When construed liberally in favor of the plaintiff, as we are required to do in reviewing a dismissal under Rule 12.02(6), we cannot pinpoint when Mrs. Igou experienced the loss of Mr. Igou's consortium. It certainly could have occurred as early as December 25, 2011, when Mr. Igou returned to Vanderbilt with his symptoms. However, it may have occurred in July 2012, when Mr. Igou "demonstrated significant erectile dysfunction," or even later. In light of this, we find the trial court erred in dismissing Mrs. Igou's claim with prejudice on a motion to dismiss.

### III. CONCLUSION

For the foregoing reasons, the judgment of the trial court dismissing Mrs. Igou's claims with prejudice is vacated, and the case is remanded for entry of an order consistent with this opinion.

_____
W. NEAL McBRAYER, JUDGE