IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 1, 2023

**THE STATE OF TENNESSEE on behalf of BLEDSOE COUNTY, TENNESSEE, and THE CITY OF PIKEVILLE, TENNESSEE v. WHORISKEY, INC.**

**Appeal from the Chancery Court for Bledsoe County**
**No. 2019-DT-3368 and 2020-DT-3400   Melissa Thomas Willis, Chancellor**

_____

**No. E2023-00505-COA-R3-CV**

_____

This appeal arises from an action to recover delinquent ad valorem real property taxes. Whoriskey, Inc., which currently owns the property, raises numerous challenges to the proposed delinquent tax sale. In principal part, it asserts that the property at issue was not subject to taxation during the relevant tax period, 2017 and 2018, because it claims that, during that time, the property was owned by the United States Government through a federal forfeiture. Further, Whoriskey contends that Bledsoe County and the City of Pikeville are barred from recovering back taxes because they failed to assert a claim in federal court. The trial court found no factual or legal basis to support Whoriskey's contentions and determined that the County and City could proceed with the delinquent tax sale to recover ad valorem real property taxes on the subject real property for the tax years 2017 and 2018. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KRISTI M. DAVIS, JJ., joined.

Thomas K. Austin, Dunlap, Tennessee, for the appellant, Whoriskey, Inc.

Howard L. Upchurch, Pikeville, Tennessee, for the appellees, Bledsoe County, Tennessee and The City of Pikeville, Tennessee.

# MEMORANDUM OPINION[1]

## FACTS AND PROCEDURAL HISTORY

On March 29, 2019, and then on March 31, 2019, the State of Tennessee, acting on its own behalf and on behalf of the City of Pikeville and Bledsoe County ("the City and the County" or collectively "Plaintiffs"), commenced these consolidated actions to collect delinquent ad valorem property taxes for the years 2017 and 2018 on various and sundry real properties, including an industrial property located on Ferro Street in Pikeville, Tennessee (hereinafter "the Pikeville Plant").[2] Both actions were brought pursuant to Tennessee Code Annotated § 67-5-201, et. seq. and Tennessee Code Annotated § 67-5-2405, et seq.

Whoriskey, Inc., filed an answer stating that it is the owner of the Pikeville Plant, which it acquired through a foreclosure sale on July 29, 2019, from the previous owner, Textile Corporation of America, LLC ("TCA").[3]

Whoriskey asserted that, after it acquired title to the Pikeville Plant, the United States of America commenced criminal proceedings against the former members and owners of TCA, Karim Sadruddin and Rahim Sadruddin (collectively "the Sadruddins"). These criminal proceedings gave rise to a federal court protective order and a federal court forfeiture proceeding. Furthermore, Whoriskey asserted that the Sadruddins had filed a complaint in the Chancery Court of Bledsoe County, by which they were attempting to set aside the TCA foreclosure sale and regain title to the Pikeville Plant.

For its defense, Whoriskey contended that it should not be held responsible for the ad valorem property taxes assessed by the City and County for the years 2017 and 2018. Whoriskey asserted that the Pikeville Plant was owned by the United States Government during the relevant time period as a consequence of the federal forfeiture, and that federal law prevents a municipality from assessing property taxes on property owned by the United States. Further, Whoriskey argued that because the City and County had failed to perfect a claim in federal court, they were barred from recovering the back taxes for 2017 and 2018.

---

[1] Rule 10 Memorandum Opinion. When a case is decided by memorandum opinion pursuant to Court of Appeals Rule 10 it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

[2] In case number 2019-DT-3368, they sought to collect 2017 taxes and in case number 2020-DT-3400 they sought to collect 2018 taxes.

[3] Textile Corporation of America, LLC, acquired the property via Warranty Deed from the Bledsoe County Industrial Development Corporation Board, dated July 7, 2017, and recorded July 17, 2017 in Book RB 313, Page 448, Register's Office of Bledsoe County, Tennessee.

Whoriskey also filed a motion to stay any hearings in the matter, asserting that the court was preempted from taking any action due to the County and City's failure to claim any interest in the federal court protective order and the federal court forfeiture action. Thereafter, Whoriskey filed a motion to dismiss the complaint. Plaintiffs filed responses in opposition to Whoriskey's motions. The trial court implicitly denied Whoriskey's motions by subsequently deciding the case on its merits.

The case was tried upon the argument of counsel and examination of exhibits and the record on January 9, 2023. Pursuant to a final order entered on March 30, 2023, the trial court found the following:

> Tenn. Code Ann. 67-5-2102 and 2103 are the prevailing statutes and [Whoriskey's] arguments are inapplicable because there was never a final order of forfeiture or evidence that the property in dispute was ever owned by or vested with a federal or [sic] government, which would bar the accrual of property taxes.

Based on these findings, the court determined that Plaintiffs could proceed with the delinquent tax sale to recover ad valorem real property taxes on the Pikeville Plant for the tax years 2017 and 2018, plus penalties and interest. The court also awarded liens in favor of Plaintiffs upon the Pikeville Plant to secure the payment of taxes, penalties and interest subject to the equity of redemption.

This appeal followed.

**ISSUES**

The issue, as framed by Whoriskey, reads:

> Whether the Bledsoe County Chancery Court erred by Ordering that the City of Pikeville and Bledsoe County could proceed with a tax sale to recover ad valorem taxes for tax years 2017 and 2018 on a piece of real property located at 90 Ferro Street Pikeville, Tennessee even though the property was subject to a federal forfeiture and Bledsoe County and the City of Pikeville never filed a claim in the US District Court?

For their part, Plaintiffs identify the issue as follows:

> Whether the Trial Court erred in its determination that the City and County could proceed with the delinquent tax sale and enforce their statutory lien to recover ad valorem real property taxes for the tax years 2017 and 2018 against the subject real property situated at 90 Ferro Street, Pikeville, Bledsoe County, Tennessee.

**STANDARD OF REVIEW**

Our standard of review of legal issues, such as statutory interpretation, is de novo. *Moore v. Town of Collierville*, 124 S.W.3d 93, 97 (Tenn. 2004) (citing *Tucker v. Foamex, LP,* 31 S.W.3d 241, 242 (Tenn. 2000). Thus, our review of this case is de novo upon the record with a presumption of correctness of the findings of fact by the trial court. Tenn. R. App. P. 13(d). Absent error of law, the trial court's decision will be affirmed, unless the evidence preponderates against the factual findings. *Wilson v. Blount Cnty.*, 207 S.W.3d 741, 745 (Tenn. 2006) (citing Tenn. R. App. P. 13(d)). No presumption of correctness attaches to the trial court's conclusions of law. *Id*. (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995)).

With regard to the proper construction of a statute, this court has stated

The leading rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008)). To that end, we start with an examination of the statute's language, *Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 881 (Tenn. 2005), presuming that the legislature intended that each word be given full effect. *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007). When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *see also In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous ... the plain and ordinary meaning of the statute must be given effect.") (citing *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 516 (Tenn. 2005)). The construction of a statute is also a question of law which we review de novo without any presumption of correctness. *Lind*, 356 S.W.3d at 895.

*Pinnacle Towers Acquisition LLC v. Penchion*, 523 S.W.3d 673, 678 (Tenn. Ct. App. 2017) (quoting *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307–08 (Tenn. 2012)).

**ANALYSIS**

Whoriskey contends that the Pikeville Plant was not subject to taxation during the relevant tax periods, 2017 and 2018, because it claims that the property was owned by the United States Government during that time. The contention that the United States Government owned the Pikeville Plant is principally based on the above-mentioned preliminary orders of forfeiture that arose from criminal proceedings against the Sadruddins.

To analyze the issues presented, it is necessary to review the facts and procedural history that gave rise to the preliminary order of forfeiture and what happened thereafter. The relevant facts and procedural history related to the collateral proceedings, as stated in Whoriskey's appellate brief, which facts Plaintiffs adopted, read, in pertinent part:

Whoriskey, Inc. acquired its initial interest in the property at a foreclosure sale on July 29, 2019 for $1.4 million. Textile Corporation of America, LLC ("TCA") was Whoriskey's predecessor in title owning the Pikeville Plant during years 2017 and 2018. TCA members included Karim Sadruddin and Rahim Sadruddin (collectively, "Sadruddins"). The Sadruddins were ultimately convicted for various federal criminal offenses for their unlawful acts while acting as members for TCA. These convictions led to a forfeiture of the Pikeville Plant by the United States relating back to the date of first criminal activity, October 3, 2017. Whoriskey timely filed a claim in Federal Court and the United States eventually released the Pikeville Plant after reaching a negotiated settlement with Whoriskey in the United States District Court of the Eastern District of Tennessee.

On July 1, 2017, TCA purchased the Pikeville Plant from the Bledsoe County Industrial Development Board for $850,000.00. On October 3, 2017, Karim Sadruddin, President of TCA, sent an email to Rahim Sadruddin and an individual with the Southeast Tennessee Development containing a fraudulent invoice in the amount of $1.4 Million purporting to reflect work that had been done on the building and a record reflecting the cost of the purchase of the building valued at $850,000. This email resulted in a disbursement of funds from the Bledsoe County Industrial Development Board to Karim Sadruddin in the amount of $2,256,900. Karim Sadruddin and Rahim Sadruddin then used these funds to purchase tarps which had been part of a scheme to defraud the Federal Emergency Management Agency (FEMA).

Ultimately, TCA lost the Pikeville Plant to a foreclosure sale. Whoriskey, purchased the Pikeville Plant by being the highest and best bidder at the foreclosure sale on July 29, 2019. On November 13, 2019, Karim Sadruddin and Rahim Sadruddin plead guilty to a Federal Criminal Information on the charges of Wire Fraud x 2 pursuant to 18 U.S.C. § 1343 and Conspiracy to Commit Money Laundering pursuant to 18 U.S.C. § 1956(h). The Sadruddins admitted that they conspired and agreed to participate in a scheme and did intentionally participate in a scheme to defraud by knowingly making various fraudulent representations via wire. They further admitted that their scheme resulted in a collective loss to various victim entities between the amount of $3.5 million and $9.5 million.

- 5 -

Based on the Sadruddins plea agreements on November 13, 2019, the United States District Court entered Agreed Preliminary Orders of Forfeiture, forfeiting various assets, including the Pikeville Plant to the United States, pursuant to 18 U.S.C. § 1981, 982 and 28 U.S.C. § 2461. "The United States notified all interested persons believed to have an alleged interest in the property and published the forfeiture on the official government website pursuant to 21 U.S.C. § 853." Whoriskey filed a timely Petition for Hearing and properly asserted its interest in the Pikeville Plant. Whoriskey also filed an interest in other forfeited assets seized by the United States. Neither Bledsoe County nor the City of Pikeville filed a claim in Federal Court to assert any interest in the forfeited property or any other forfeited assets.

On June 9, 2021, Whoriskey entered into a settlement agreement with the United States Attorney General regarding the claims in the forfeited property. Said Agreement released the United States' interest in the Pikeville Plant and Whoriskey released any claims to any other asset. On July 22, 2021 an Order Releasing Protective Order as to the Pikeville Plant was signed by US Magistrate Judge, Christopher Steger.

(Internal citations to the record omitted).

It is significant to note that only *preliminary* orders of forfeiture resulted from the Sadruddins' federal court proceedings. A *final* order of forfeiture was never issued, which is significant as is discussed and distinguished below. Moreover, as stated in the Notice of Stipulated Settlement Agreement and Release of Claim, the previous lien lis pendens and protective orders filed against the Pikeville Plant were released. It is also important to note that even if the Pikeville Plant had been owned by the federal government, it was not used exclusively for governmental purposes. The significance of this fact is discussed below.

County governments are authorized to levy taxes on real property. *See* Tenn. Code Ann. § 67-5-102. These taxes are due and payable on the first Monday in October of each year. *See* Tenn. Code Ann. § 67-1-701. Property owners in Tennessee are charged with the knowledge that their property is subject to taxation and that property taxes are due each year. *See Davidson Pabts, LLC v. Worsham*, No. M2014-01061-COA-R3-CV, 2015 WL 4115174, at *4 (Tenn. Ct. App. May 18, 2015) (citing *Marlowe v. Kingdom Hall of Jehovah's Witnesses*, 541 S.W.2d 121, 124 (Tenn. 1976)). If a property owner fails to pay taxes, the government shall file suit to collect them, *see* Tenn. Code Ann. § 67-5-2405, and if taxes remain unpaid, the court has the authority to sell the property. *See* Tenn. Code Ann. §§ 67-5-2005 and 67-5-2501.

Title 67 of the Tennessee Code sets forth the relevant statutory scheme applicable to the assessment of property taxes, liens imposed against real and personal properties in

favor of cities and counties, and the procedures and mechanisms for enforcement of such liens through the sale of real and personal properties. Under Tennessee Code Annotated § 67-5-101, all real property is to be assessed for taxation for county and municipal purposes. Such assessments are mandatory. Tennessee Code Annotated § 67-5-102 authorizes the counties to levy ad valorem taxes upon all properties, in amounts fixed by the county legislative body, upon the values of the properties. Tennessee Code Annotated § 67-5-103 contains similar authority for municipalities.

Notwithstanding the above requirements, Tennessee exempts "government property" from taxation. *See* Tenn. Code Ann. § 67-5-203. This includes property of the United States, the State of Tennessee, and any county or municipality. *See Id.* However, to be exempt, the government property must be "used exclusively for public, county or municipal purposes." *See Id.* As discussed above, the United States Government did not own or otherwise hold a legal interest in the Pikeville Plant. Assuming arguendo that it did, there is no evidence that the United States Government ever used the Pikeville Plant *exclusively* for public purposes as required by the governmental taxation exemption set forth in Tennessee Code Annotated § 67-5-203.

As Plaintiffs correctly contend, only upon the entry of a *final* order of forfeiture and the disposition of any petitions by a federal court does title to seized properties pass to the United States Government. *See* 21 U.S.C. § 853(n)(7). Here, a final order of forfeiture was never issued, and it is undisputed that the United States forfeiture action was dismissed. As a consequence, the United States Government was never an owner of the Pikeville Plant. Because the United States Government was not an owner of the Pikeville Plant, the assessment of the property for taxes by the City and the County and the attachment of the City and County's lien were appropriate.

As for the lien upon the Pikeville Plant, Tennessee Code Annotated § 67-5-2101(a) states that taxes assessed by a county or municipality upon real property, as well as penalties, interests and costs accruing thereon, "shall become and remain a first lien upon such real property from January 1 of the year for which such taxes are assessed." Furthermore, "property taxes shall become and remain a personal debt of the property owner or property owners as of January 1 of the tax year and, when delinquent, may be collected as any other personal debt." Tenn. Code Ann. § 67-5-2101(b).

Tennessee Code Annotated § 67-5-2102 provides as follows:

(a) This lien shall extend to each and every part of all tracts or lots of land, and to every species of taxable property, notwithstanding any division or alienation thereof, of assessing or advertising the same in the name of persons not actually owners thereof at the time of the sale, or though the owner be unknown. However, there shall be no lien against leased personal property assessed to a lessee.

- 7 -

(b) Such taxes shall be a lien upon the fee in the property, and not merely upon the interest of the person to whom the property is or ought to be assessed, but to any and all other interests in the property, whether in reservation or remainder, or of lienors, or of any nature whatsoever. . . .

Here, it is undisputed that the property taxes on the Pikeville Plant have not been paid for 2017 and 2018, and that the property taxes owing for these periods are delinquent. Accordingly, the City and County hold a valid lien against the Pikeville Plant for the collection of delinquent ad valorem real property taxes.

For the foregoing reasons, we affirm both the trial court's decision that the City and County held a valid lien against the Pikeville Plant for the collection of delinquent ad valorem real property taxes, as well as its determination that the City and County may proceed with the delinquent tax sale to recover ad valorem real property taxes on the Pikeville Plant for the tax years 2017 and 2018.

## IN CONCLUSION

The judgment of the trial court is affirmed and this matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Whoriskey, Inc., for which execution may issue.

_____
FRANK G. CLEMENT JR., P.J., M.S.